[Sac. No. 595.  Department One. — March 16, 1901.]

SOUTHERN PACIFIC COMPANY, Appellant, v. J. W. HYATT et al., Respondents.

RAILROADS — PUBLIC HIGHWAYS — RIGHT OF WAY — STATUTE OF LIMITATIONS — PRESCRIPTIVE TITLE. — Railroads are public highways, constructed for the advantage of the public; and a railroad right of way is such a public use as to prevent the running of the statute of limitations, and the acquisition of a prescriptive title to any part thereof in favor of private persons.

ID. — EJECTMENT. — The railroad company may maintain an action of ejectment against persons in wrongful possession of any part of its right of way. The fact that it may maintain such action does not make good a plea of the bar of the statute of limitations in their favor.

APPEAL from a judgment of the Superior Court of Placer County.  J. E. Prewitt, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, and Fred. B. Lake, for Appellant.

Tabor & Tabor, and Tuttle & Wright, for Respondents.

VAN DYKE, J.—The questions involved in this appeal are,—1. Whether a railroad right of way is such a public use as to prevent the running of the statute of limitations, or the acquisition of an adverse title thereto by prescription; 2. In case of intrusion upon such right of way, is ejectment the proper remedy?

Respondent Hyatt entered upon, and occupied for more than five years prior to the commencement of the action, a portion of the right of way, in Placer County, granted to the Central Pacific Railroad Company by the act of Congress of July 1, 1862.   (12 U.S. Stats. at Large, p. 489.)   The court finds that prior to 1867 the predecessor of the plaintiff constructed its line of railroad over said right of way, and plaintiff and its predecessor have ever since maintained its railroad over said right of way; that the defendant Hyatt has been in the open, notorious, and exclusive possession and occupancy of the property described in the complaint, for more than five years previous to the commencement of the action, and has paid taxes thereon, and defendant Savage was the tenant of said Hyatt, but that plaintiff, during said time, has also paid all taxes levied and assessed upon said right of way.   The court below held, as a conclusion of law from the facts found, that the plaintiff is not entitled to recover possession of the premises in question; and from the judgment in favor of defendant the plaintiff appeals.

1.   The questions involved are not new, but have been passed upon frequently in the courts of the United States, and in this state and other states.   In *San Francisco etc. R. R. Co.* v. *Caldwell,* 31 Cal. 368, this court says: —

" Whether the use of the property taken for the purposes of the railroad is a public use within the meaning of the constitution, or the contrary, is involved in the question presented for consideration.   But on this subject there is no room for controversy at this time, if respect is to be paid to the adjudications of the highest courts of the land.   Railroads are esteemed as public highways, constructed for the advantage of the public."   (Citing several authorities from other states.)

In *Moran* v. *Ross,* 79 Cal. 159, it is said: "Railways are a species of public highways, and, as such, have uniformly been held to be public improvements, to which the right of eminent domain attached, although they may be considered as private corporations or individuals, and operated for the emoluments to be derived therefrom by the operators." (Citing Mills on Eminent Domain, sec. 14; Wood on Law of Railroads, sec. 226, and other cases.)

*Southern Pacific Co.* v. *Burr,* 86 Cal. 279, was an action like this, to recover possession of about five acres of land situated

in Placer County, within and forming a part of the right of way granted to the Central Pacific Railroad Company by the act of Congress referred to. (Citing from section 2 of that act, wherein the right of way is granted to the Central Pacific Railroad Company of California for the construction of said railroad through the public lands, the plaintiff in that case, as in this, being the successor in interest of said grantee.) The defendant in that case was the successor in interest of the party to whom a patent to the quarter-section embracing the disputed premises was issued by the United States in December, 1880, and, as such, he claimed title in fee. The defendant had the land inclosed, and the plaintiff offered to allow him to maintain his inclosure and use the land on condition that he would accept a lease thereof and pay a nominal.rent, which he accepted, but at the expiration of the term of one year he refused to renew it, claiming the land as his own. After commenting upon some other cases, the court says: "Here there was a special grant of a right of way two hundred feet in width on each side of the road. This grant is a conclusive legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use, and it necessarily involves a right of possession in the grantee, and is inconsistent with any adverse possession of any part of the land embraced within the grant. It is true, the strip of land now actually occupied by the road-bed and telegraph line may be only a small part of the four hundred feet granted,-but this fact is of no consequence. The company may at some time want to use more land for side-tracks, or 'other purposes, and it is entitled to have the land clear and unobstructed whenever it shall have occasion to do so."

In *Olcott* v. *Board of Supervisors*, 16 Wall. 678, the United States supreme court says: "That railroads, though constructed by private corporations and owned by them, are public highways, has been the doctrine of nearly all the courts ever since such conveniences for passage and transportation have had any existence. Very early the question arose whether a state's right of eminent domain could be exercised by a private corporation created for the purpose of constructing a railroad. Clearly, it could not, unless taking land for such a purpose by such an agency is taking land for public use. The right of eminent domain nowhere justifies taking property for private use. Yet it is a doctrine universally accepted, that a state

legislature may authorize a private corporation to take land for the construction of such a road, making compensation to the owner. What else does this doctrine mean, if not that building a railroad, though it be built by a private corporation, is an act done for a public use? And the reason why the use has always been held a public one is, that such a road is a highway, whether made by the government itself, or by the agency of corporate bodies, or even by individuals, when they obtain the power to construct it from legislative grant. It would be useless to cite the numerous decisions to this effect which have been made in the state courts. . . . It is said that railroads are not public highways *per se;* that they are only declared such by the decisions of the courts; and that they have been declared public only with respect to the power of eminent domain. This is a mistake. In their very nature they are public highways. It needed no decision of courts to make them such. True, they must be used in their peculiar manner and under certain restrictions, but they are facilities for passage and transportation afforded to the public, of which the public has a right to avail itself. As well might it be said a turnpike is a highway, only because declared such by judicial decision. A railroad built by a state no one claims would be anything else than a public highway, justifying taxation for its construction and maintenance, though it could be no more open to public use than is a road built and owned by a corporation. Yet it is the purpose and the uses of a work which determine its character."

In *Venable* v. *Wabash etc. Ry. Co.*, 112 Mo. 103, it was held that a conveyance to a railroad company of a right of way through the grantor's land is a dedication to the public. In the court opinion it is said: " There can be no doubt, from the text-books and adjudications, that, where a railroad is empowered, as in the present instance, to condemn land for a public use, it occupies in all respects the same footing as any other corporation or quasi-corporation, municipal or otherwise, or governmental agency, when exercising similar authority to obtain land for a market-place, for a street, highway, jail, or court-house."

In *Railroad Co.* v. *Baldwin*, 103 U. S. 426, the court had under consideration the Congressional railroad right of way grant above referred to. " The right of way for the whole distance of the proposed route was a very important part of the aid

given. If the company could be compelled to purchase its way over any section that might be occupied in advance of its location, very serious obstacles would be often imposed to the progress of the road. For any loss of lands by settlement or reservation, other lands are given, but for the loss of the right of way by these means, no compensation is provided, nor could any be given by the substitution of another route. The uncertainty as to the ultimate location of the line of the road is recognized throughout the act, and where any qualification is intended in the operation of the grant of lands from this circumstance, it is designated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists. . . . We are of opinion, therefore, that all persons acquiring any portion of the public lands after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road."

Jones on Easements lays down the rule that the prescriptive right to a passageway along the track or right of way of a railroad cannot be acquired by the public, or by individuals, while the railroad is constantly using a single track over such right of way. The construction and operation of one track on its location is an assertion of right to the entire width of its right of way. The presence of one track constantly in use is a definite badge of ownership, and the only practical assertion of title that can be made. If the public has used paths by the side of the railroad track for any length of time, the use must be considered as permissive, and not adverse. (Citing a long list of authorities from different states; Jones on Easements, secs. 2, 81, p. 232.) Individuals may intrude upon or obstruct the public thoroughfare, but cannot acquire title by prescription to such lands. (*Oreña* v. *City of Santa Barbara*, 91 Cal. 631; *Hoadley* v. *San Francisco*, 50 Cal. 265; *Visalia* v. *Jacob*, 65 Cal. 435;[1] *People* v. *Pope*, 53 Cal. 450; *San Francisco* v. *Bradbury*, 92 Cal. 414; *Archer* v. *Salinas City*, 93 Cal. 51.)

2. Respondent's counsel contend that "if the appellant can maintain the present action—ejectment—at all, then the plea of the bar of the statute is good." And he cites in support of this contention, *Allen* v. *McKay*, 120 Cal. 332, wherein it is

---

[1] 52 Am. Rep. 303.

claimed the court held that if the title to the lands in question was such as to found thereon an action to recover the possession of the same, such title may be lost by adverse possession. That was an action to recover possession of a tract of land in Humboldt County, covered by the waters of Humboldt Bay, and the court says: "If the land in controversy was not private property, plaintiffs had no title. If it was private property, there certainly could be an adverse occupancy of it for the statutory period." The difference between that and this is, that the contest there was in reference to the ownership and possession of private property. Here, as already shown, the premises in question were granted for and dedicated to a public use. There is but one form of civil action in this state; the substance of the action determines its character. Being entitled to the possession of the premises in question as a part of the railroad right of way under the Congressional grant, for the purposes therein specified, and the defendant having intruded thereupon and withholding the same, the plaintiff has a right to recover the possession thereof by any appropriate action; and whether that action be called ejectment, or by any other name, is quite immaterial.

*Central Pac. R.R. Co.* v. *Benity,* 5 Saw. 118, was an action in ejectment by the railroad company against the defendant therein for a portion of the railroad right of way acquired under the grant in question. The court there says: "If the plaintiff is entitled to actual possession of the land for the purpose of effecting the object in view when the right of way was granted, it can recover such possession in some judicial proceeding. The mere form of the action has ceased to be of any importance in this court. There is now but one form of all common-law actions. . . . We think this complaint does state a good case. It may be admitted that for the obstruction of a mere easement the recovery of the possession of the land itself would not be the proper remedy. But, in order that the plaintiff in the case at bar may make such use of the land as the grantor intended it should under the grant of a right of way, it becomes necessary to take and keep an actual possession of the land."

*Southern Pacific Co.* v. *Burr, supra,* was also an action at law to recover possession of a portion of the railroad right of way in question. As already shown, the court held that that

action was not only maintainable, but that the statute of limitations did not run against the right of the plaintiff therein.

*Visalia* v. *Jacob, supra,* was also an action of ejectment, and the court, in passing, says: "An action of ejectment may be maintained by a municipal corporation for the recovery of the possession of a street wrongfully possessed by an individual, whether the corporation owns the fee or the adjoining proprietor retains it. In the latter case the right of a municipality to regulate the public use, and for that purpose to possess, use, and control the property, is treated by the court as a legal and not merely an equitable right"; citing authorities, and adding: "But it does not follow that such an action is barred by an adverse possession for a statutory period"; and referring to *San Francisco* v. *Calderwood,* 31 Cal. 589,[2] where it seems to have been held that ejectment would be barred, the court says, "But in that case it was found that the 'slip' had never been dedicated to the public use"; and referring, as against that case, to *Hoadley* v. *San Francisco, supra,* and *People* v. *Pope, supra.*

*San Francisco* v. *Bradbury, supra,* was ejectment to recover the possession of an engine lot reserved to the city under the Van Ness ordinance. (See also the later case of *San Francisco* v. *Grote,* 120 Cal. 60.[3])

For the reasons stated the judgment must be reversed, and it is so ordered.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.

[2] 91 Am. Dec. 542.          [3] 65 Am. St. Rep. 155.