[Sac. No. 2185. In Bank.—August 31, 1915.]

CENTRAL PACIFIC RAILWAY COMPANY, Respondent,
v. J. C. DROGE, Appellant.

ACTION TO RECOVER REAL PROPERTY—PROOF OF TITLE—DEEDS—EVIDENCE—ORIGINAL RECORD.—Under section 1951 of the Code of Civil Procedure the original record of a deed properly acknowledged may be read in evidence to prove the contents of the deed, with like effect as the deed itself and without further proof.

ID.—INSTRUMENT RECORDED IN WRONG BOOK—EVIDENCE—CONSTRUCTION OF SECTION 4135A, POLITICAL CODE.—The effect of section 4135a of the Political Code would probably be that the record of an instrument in a wrong book in the recorder's office, if it is properly indexed, would be competent evidence of the contents of the instrument; but where no proof was offered that a deed, recorded in the

miscellaneous records, was properly indexed, a ruling of the trial court admitting it in evidence, over objection, cannot be sustained upon that ground.

ID.—U. S. GRANT OF RIGHT OF WAY FOR TRANSCONTINENTAL RAILROAD— DETERMINATION OF NECESSITY OF LAND FOR—LACK OF POWER OF ALIENATION.—The act of Congress of July 1, 1862, granting to the Central Pacific Railroad Company a strip of land four hundred feet in width through the public lands of the United States as a right of way upon which to construct and operate a railroad from the Pacific Ocean eastward to connect with the Union Pacific Railroad to be built westerly from the Missouri River, was a conclusive determination by the United States that the entire strip granted was necessary for that purpose, and the grantee had no power to alienate or dispose of any part of it for any other purpose; and a transfer of the railroad from one company to another, as its successor in the administration of the public use and for the purpose of continuing the operation thereof, carried with it a transfer of the entire right of way, and gave to the transferee a right of possession thereto.

ID.—ADVERSE POSSESSION—PROOF OF OWNERSHIP—SUFFICIENCY OF EVI- DENCE.—In an action by the successor in interest of the Central Pacific Railroad Company to recover a portion of said right of way from an individual claiming title by adverse possession, the finding that the plaintiff company had acquired title from the latter rail- road company prior to the beginning of the action, was sustained by the evidence, where it appeared from numerous references and statements made during the trial that the plaintiff had been given possession of a strip along the railroad one hundred feet wide fenced by plaintiff's predecessor in interest and had been operating the railroad thereon for several years before the beginning of the action, and it being practically conceded that the plaintiff had in some manner acquired lawful possession of the railroad and of the one hundred foot strip before the action was begun, as the inference from these facts is that plaintiff had acquired the right to both the right of way and railroad from the former owner, which would carry the corresponding right to the entire strip of four hundred feet, since the railroad company could not lawfully separate a part from the whole.

ID.—TRANSFER OF RIGHT OF WAY—PROOF OF—STIPULATION—ADMISSIONS. In such a case, where the parties to the action made and put in evi- dence a stipulation declaring that, pursuant to section 3664 of the Political Code, statements describing the franchise, roadbed, rails, and rolling stock of the railroad had been furnished to the board of equalization each year from 1880 to 1910 by "plaintiff's prede cessor in title Central Pacific Railroad Company and plaintiff," and that these statements described "the right of way or roadway of said Central Pacific Railroad Company and of plaintiff," as being one hundred feet in width, this is a direct admission that the plain-

CLXXI Cal.—3

tiff had succeeded to the title of the Central Pacific Railroad Company to the railroad and to the right of way therefor to the extent of one hundred feet, and as the original grantee could not, without the consent of Congress, alienate or dispose of the right of way or any part thereof, except in connection with and as a part of its railroad for railroad purposes, this carried with it a transfer of the entire right of way.

ID.—CONSTRUCTION OF GRANT—RULE OF CONSTRUCTION OF STATES NOT FOLLOWED.—The supreme court of the United States has established the rule that the courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants; and the effect of such a grant must be determined in accordance with the decisions of the federal courts.

ID.—NATURE OF GRANT—ESTATE IN FEE—PUBLIC USE—LACK OF POWER TO ALIENATE—DETERMINATION OF NECESSITY OF LAND FOR RIGHT OF WAY.—The estate granted in the strip designated as a right of way by said act of Congress was an estate in fee for a special public purpose, subject only to reverter at the instance of the United States if the public use was not properly maintained, and the railroad company could not alienate any part of the right of way so as to interfere with the full exercise of the franchise granted, and the grant was a conclusive determination that the entire four hundred foot strip was necessary for the public purpose for which it was granted.

ID.—PUBLIC WAY—ADVERSE POSSESSION—TITLE NOT ACQUIRED BY.— Title to a public way cannot be gained by adverse possesion, no matter how long continued.

ID.—ACT OF CONGRESS OF 1912—TITLE BY PRESCRIPTION—CONSTRUCTION OF ACT—ACT NOT RETROACTIVE—BEGINNING OF RUNNING OF STATUTE.—The act of Congress of June 24, 1912, purporting to allow prescription in such portion of the right of way granted to the Union Pacific Railroad as should be in the adverse possession of individuals long enough to acquire title by prescription under the state laws, and granting the same to persons thus in possession, is specifically made applicable to the grant to the Union Pacific Railroad Company, and it cannot be extended by implication to the right of way granted to the Central Pacific Railroad Company; and, moreover, it is held by the supreme court of the United States that the act of 1912 is not retroactive, that the statute of limitations of a state did not begin to run as to such lands until its passage and that possession prior to the statute had no effect on the title.

ID.—POLICE POWERS OF STATE—GRANT NOT SUBJECT TO.—The railroad to be built over the right of way in question was a transcontinental road operating through several states and in furtherance of interstate commerce, a subject over which the federal authority is paramount, and a state could not impair or restrict a public way de-

clared necessary by the United States for that purpose by any attempt to limit the width of the right of way established by Congress over the public lands of the United States; and a state law authorizing a railroad company to lay out its road not exceeding nine rods wide cannot be held to divest the railroad company of that part of the right of way in excess of four and one-half rods from the center line of its railroad.

ID.—RIGHT OF WAY—FORFEITURE.—There could be no forfeiture of such right of way without the consent of Congress, and there has been no consent.

ID.—ESTOPPEL—PAYMENT FOR LAND—IMPROVEMENTS.—In such a case plaintiff is not estopped from maintaining an action by reason of the fact that the defendant paid for the subdivisions of land, which included the right of way in question, at the rate of five dollars an acre, computed on the entire acreage of said subdivisions, and has improved and cultivated the land during the forty-one years of his possession thereof.

ID.—IMPROVEMENTS—EQUITY.—No equitable considerations arise in such a case from the fact that the defendant made improvements upon the land, which consisted only in leveling to make it fit for cultivation, and more productive, where he received the entire profit thereof for many years, which more than equaled the expense of these improvements.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. Frank H. Smith, and J. A. Plummer, Judges.

James P. Langhorne, and R. C. Minor, for Appellant.

George F. Buck, for Respondent.

SHAW, J.—Appeals are here presented by the defendant from the judgment and from an order denying his motion for new trial.

The object of the action was to recover possession of four strips of land, two of which extend across the west half of section 23, and two across the northwest quarter of section 27, all in township two south, range five east, in San Joaquin County. They are each one hundred and fifty feet in width and are parts of the strip of land four hundred feet in width granted by the United States to the Central Pacific *Railroad* Company by the act of July 1, 1862, through the public lands of the United States in California, as a right of way upon which to construct and operate a railroad from the Pacific

Ocean eastward to connect with the Union Pacific Railroad to be built westward from the Missouri River. The act of Congress also granted to each of the said railroad companies the odd-numbered sections of land lying within ten miles of the part of the line built by it. (12 U. S. Stats. 489.) In 1864 the Central Pacific *Railroad* Company assigned its rights and holdings under said act of Congress to the Western Pacific Railroad Company. On June 8, 1867, it made a contract with one McLaughlin to sell to him the west half of section 23 and the northwest quarter of section 27, at the rate of five dollars per acre. McLaughlin, on April 14, 1868, assigned to Droge, the defendant, the right to purchase the said land under said contract. Dróge had entered into possession of the lands in 1867. In the year 1868 the Western Pacific Railroad Company constructed the contemplated railroad across said sections 23 and 27, and built fences on each side of its railroad at the distance of fifty feet from the center line thereof, thereby inclosing a strip of land one hundred feet wide extending through the said sections. These fences have ever since remained as thus located. The railroad company has never exercised any acts of ownership over the remaining portions of the four hundred foot strip. The defendant Droge, upon the erection of said fences, remained in possession of that part of the four hundred foot strip lying outside of said fences. He has ever since held possession thereof, has inclosed the same by connecting other fences with the aforesaid railroad fences and has improved and cultivated the same. The land sought to be recovered in this action embraces the strips of land one hundred and fifty feet in width lying within the subdivisions above mentioned and between the said railroad fences and the exterior lines of the four hundred foot strip aforesaid.

The complaint is in the ordinary form of a cause of action to recover possession of real property. The answer denies the ownership by the plaintiff, and as an affirmative defense alleges that the defendant has held possession of the land adversely, under claim of title, and uninterruptedly, for forty-one years next before the beginning of the action, that he has paid the taxes thereon during all of said period, and that the action is barred by statute of limitations. An estoppel is also alleged in defense, the particulars of which will hereafter be more particularly stated.

1. The appellant's first point is that the plaintiff failed to prove its alleged title to the land. In June, 1870, after the making of the contract to sell these lands to McLaughlin, the Western Pacific Railroad Company and the Central Pacific *Railroad* Company, with the approval of Congress, consolidated under the name of the Central Pacific *Railroad* Company. The plaintiff, the Central Pacific *Railway* Company, was incorporated on July 29, 1899, under the laws of the state of Utah. In order to establish a chain of title to the lands in controversy it was necessary for the plaintiff to prove a transfer to it by the Central Pacific *Railroad* Company. In proof of this the plaintiff offered in evidence miscellaneous record "G" of the records of San Joaquin County, containing what purported to be the record of a deed of the Central Pacific *Railroad* Company conveying these lands to the Central Pacific *Railway* Company, duly executed and acknowledged. The defendant objected to this on the ground that the record was not competent evidence of the contents of the deed or of its execution, for the reason that the miscellaneous record was not a proper record book in which to record deeds. The court overruled the objection and admitted the deed in evidence.

Section 1951 of the Code of Civil Procedure provides that the original record of a deed properly acknowledged may be read in evidence to prove the contents of the deed, with like effect as the deed itself and without further proof. In *Cady* v. *Purser,* 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844], the court held that the record of a mortgage in a book other than the mortgage record does not give constructive notice to a subsequent purchaser, the reason being that such mortgage is not "recorded as prescribed by law," within the meaning of section 1213 of the Civil Code, making instruments so recorded constructive notice to subsequent purchasers. This decision casts some doubt upon the admissibility of said miscellaneous record as evidence of the contents of the deed. After that decision the legislature enacted section 4135a of the Political Code declaring that if an instrument is recorded in the wrong book, but is indexed in the proper index, the record of the instrument, though in the wrong book, is constructive notice of its contents from and after the time it is properly indexed. The effect of this section would probably be that the record of an instrument in the wrong book, if it is

properly indexed, would be competent evidence of the con-
tents of the instrument. The plaintiff did not offer any
proof that it was properly indexed and we cannot sustain the
ruling of the court upon that ground. We deem it unneces-
sary to determine whether or not the miscellaneous record
was competent evidence. There was other evidence sufficient
to sustain the finding that the plaintiff company had acquired
title from the Central Pacific *Railroad* Company prior to the
beginning of the action. It appeared from numerous refer-
ences and statements made during the trial that the plaintiff
had been in possession of the one hundred foot strip fenced
by the Western Pacific Railroad Company and had been oper-
ating the railroad thereon for several years before the begin-
ning of the action. It was practically conceded that the
plaintiff had in some manner acquired lawful possession of
the railroad and of the one hundred foot strip before the ac-
tion was begun. In *Northern Pac. Ry.* v. *Townsend*, 190
U. S. 267, [47 L. Ed. 1044, 190 Sup. Ct. Rep. 267],
the supreme court of the United States decided that the
grant of a four hundred foot strip of land to that com-
pany as a right of way for a transcontinental railroad to be
built thereon was a conclusive determination by the United
States that the entire strip granted was necessary for that
purpose and that the grantee had no power to alienate or
dispose of any part of it for any other purpose. The terms
of the grant in this case are in effect the same as those of the
grant considered in that case. The principle there stated
applies with equal force to the present case. The fact that
plaintiff had in some manner obtained possession of this part
of the right of way, and of the railroad, and was using and
operating the same, created an inference that it had acquired
the right to both from the former owner and, under the de-
cision above mentioned, this would carry the corresponding
right to the strip four hundred feet wide, since the railroad
company could not lawfully separate a part from the whole.
In addition to this evidence the parties to the action made
and put in evidence a stipulation declaring that, pursuant to
section 3664 of the Political Code, statements describing the
franchise, roadbed, rails, and rolling stock of this railroad had
been furnished to the state board of equalization each year
from 1880 to 1910 by ''plaintiff's predecessor in title Central
Pacific *Railroad* Company and plaintiff,'' and that these state-

ments described "the right of way or roadway of said Central Pacific *Railroad* Company and of plaintiff" as being one hundred feet in width. This is a direct admission that the plaintiff had succeeded to the title of the Central Pacific *Railroad* Company to the railroad and to the right of way therefor to the extent of one hundred feet. Under the decision in the Northern Pacific case, aforesaid, the Central Pacific *Railroad* Company could not, without the consent of Congress, alienate or dispose of the right of way or any part thereof except in connection with and as a part of a transfer of its railroad and for railroad purposes. It follows that a transfer of the railroad from one company to another, as its successor in the administration of the public use and for the purpose of continuing the operation thereof, would carry with it a transfer of the entire right of way and give to the transferee the right of possession thereto. These circumstances and this evidence were sufficient to support the finding that the plaintiff had acquired title to the property. There was no evidence to show that the plaintiff had not acquired the title of the Central Pacific *Railroad* Company. The objection was purely technical. In view of the other evidence of title we can not hold that the ruling admitting the record in evidence, even if erroneous, was substantially prejudicial to the appellant.

2. The defendant claims that he has acquired title by prescription to the one hundred and fifty foot strips in dispute. The court found that, for more than forty-one years immediately before the action was begun, Droge had openly, notoriously, exclusively, uninterruptedly, and continuously occupied and cultivated these parcels, and that he had, during that time, paid all taxes thereon, but that his possession was not adverse "to the plaintiff or its predecessors in title under a claim of title exclusive of any other right." The evidence showed without conflict that defendant had, in fact, during all this period, claimed title to the land, and that his possession was, in fact, hostile to the plaintiff and its predecessors in interest. The finding that the defendant was not holding adversely would be contrary to these undisputed facts, if the land were held in ordinary ownership. This part of the finding was evidently a conclusion of law based upon the theory that there can be no effectual adverse possession of a public way of this character. Thus considered the finding is correct. The grant of the right of way was made by the

United States to the Central Pacific *Railroad* Company. The supreme court of the United States has established the rule that "the courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants." (*Packer* v. *Bird*, 137 U. S. 669, [34 L. Ed. 819, 11 Sup. Ct. Rep. 210]; *Shively* v. *Bowlby*, 152 U. S. 44, [38 L. Ed. 331, 14 Sup. Ct. Rep. 548]; *Northern Pac. Ry.* v. *Townsend*, 190 U. S. 267, [47 L. Ed. 1044, 23 Sup. Ct. Rep. 671].) The effect of the grant in question must, therefore, be determined in accordance with the decisions of the federal courts. In the last-named case the court declared the rule to be that the estate granted in the strip designated as a right of way by this act of Congress was an estate in fee for a special public purpose, subject only to reverter at the instance of the United States if the public use was not properly maintained, that the railroad company could not alienate any part of the right of way so as to interfere with the full exercise of the franchise granted, and that the grant, as above stated, was a conclusive determination that the entire four hundred foot strip was necessary for the public purpose for which it was granted. Referring to the claim of Townsend to a title by prescription, the court said "it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly," and that "the possession by individuals of portions of the right of way can not be treated, without overthrowing the act of Congress, as forming the basis of an adverse possession which may ripen into a good title as against the railroad company." See, also, to the same effect, *Southern Pac. Co.* v. *Hyatt*, 132 Cal. 240, [54 L. Ed. 522, 64 Pac. 272]; *Southern Pac. Co.* v. *Burr*, 86 Cal. 279, [24 Pac. 1032]. It is a familiar rule in this state that title to a public way cannot be gained by adverse possession, no matter how long continued. Our decisions on the subject are cited in *Patton* v. *City of Los Angeles*, 169 Cal. 521, [147 Pac. 143]. Under these authorities it is clear that the defendant's claim of title by adverse possession can not be sustained.

The decision in *Northern Pac. Ry.* v. *Townsend*, 190 U. S. 267, [47 L. Ed. 1044, 23 Sup. Ct. Rep. 671] disposes of the

claim that the evidence does not show that the entire four hundred feet was necessary for the public use. The grant itself adjudicates the fact that it is all necessary.

There is no force in the claim that the act of Congress of June 24, 1912, purporting to allow prescription in such portion of the right of way granted to the Union Pacific Railroad as should be in the adverse possession of individuals long enough to acquire title by prescription under the state laws, and granting the same to persons thus in possession, is effective to perfect the title of the defendant to these parcels of land. It is true that the grant to the Central Pacific *Railroad* Company was made by the act which also contained the grant to the Union Pacific Railroad Company, mentioned in the act of June 24, 1912, and that the grant to the Central Pacific *Railroad* Company was declared to be upon "the same terms and conditions" as that to the Union Pacific Railroad Company. But the act of 1912 is specifically made applicable to the grant to the Union Pacific Railroad Company. It could not be extended by implication to the right of way granted to the Central Pacific *Railroad* Company. Moreover, it is held by the supreme court of the United States that the act of 1912 is not retroactive, that the statute of limitations of a state did not begin to run as to such lands until its passage and that "possession prior to the statute had no effect on the title." (*Union Pac. R. R.* v. *Laramie,* 231 U. S. 196, [58 L. Ed. 179, 34 Sup. Ct. Rep. 101] ; *Union Pac. R. R.* v. *Snow,* 231 U. S. 204, [58 L. Ed. 184, 34 Sup. Ct. Rep. 104].)

3. The further claim is made that the grant of this four hundred foot right of way was subject to the police powers of the state and that the law of this state, authorizing a railroad company "to lay out its road not exceeding nine rods wide" (Stats. 1861, p. 615, sec. 16, subd. 4) operated to divest the railroad company of that part of the four hundred foot strip lying more than four and one-half rods from the center line of its railroad, or, at least, to destroy the public use in that portion thereof so as to make it subject to acquisition by adverse possession. It was declared in *Northern Pac. Ry.* v. *Townsend,* 190 U. S. 267, [47 L. Ed. 1044, 23 Sup. Ct. Rep. 671], that the grant by the United States to the railroad company was subject to the police powers of the state, and as an instance of such power it referred to the right of the state to require the railroad company to allow public crossings of the

right of way at the intersection of public highways. Unquestionably this is correct, but it does not warrant the extension of the doctrine far enough to permit the state to partially destroy the public use or make any limitation on the width of the right of way declared to be necessary by the act of Congress. The railroad to be built over this right of way was a transcontinental road operating through several states and in furtherance of interstate commerce, a subject over which the federal authority is paramount. The state cannot impair or restrict the public way declared necessary by the United States for that purpose by any attempt to limit the width of the right of way established by Congress over the public lands of the United States. To the proposition that the parcels in question have been forfeited by reason of nonuser, it need only be said that under the doctrine of *Northern Pac. Ry.* v. *Townsend*, 190 U. S. 267, [47 L. Ed. 1044, 23 Sup. Ct. Rep. 671], there could be no forfeiture without the consent of Congress, and there has been no consent.

4. It is next claimed that the plaintiff is estopped from asserting title to the parcels in question. This supposed estoppel is based upon the fact that the defendant paid for the subdivisions of land, which included the right of way in question, at the rate of five dollars an acre, computed on the entire acreage of said subdivisions, and that he has improved and cultivated the land during the forty-one years of his possession thereof. The evidence shows that the defendant, at the time he purchased the land, was aware of the act of Congress by which the right of way along the railroad line was granted and that he paid the price stated with full knowledge thereof. It being a public statute he would be presumed to have full knowledge thereof, even if he had no actual knowledge. He made the final payment of $3.75 per acre after the railroad was in full operation. An estoppel does not arise solely by reason of the payment of money as the price of property to be granted therefor, where the payment is made with full knowledge of the fact that the proposed grant will carry title only to a part of the tract described. In such a case the party claiming the estoppel knows the true state of the title and no estoppel is created. (*Boggs* v. *Merced M. Co.*, 14 Cal. 368.) Furthermore, the estoppel here claimed would operate to discontinue a public use, to divest a title which the company could not alienate or dispose of

directly or indirectly. If, as we have seen, title by prescription, through the neglect or tolerance of the company in charge of the use, cannot be gained, it must follow that it cannot divest itself thereof through the medium of such an estoppel. The only improvement made upon the land consisted of leveling to make it fit for cultivation and more productive. Afterward, the defendant held possession of the land and obtained the entire profit thereof for many years. As he could not claim title by estoppel created by the payment of the price alone, no equitable considerations arise from these improvements, since it must be apparent that the profit he obtained more than equaled the expenses of the improvement made. We find no ground on which to sustain the defense of estoppel.

We find no other points that require notice. The appeal cannot be sustained.

The judgment and order are affirmed.

Sloss, J., Melvin, J., Lorigan J., Lawlor, J., and Angellotti, C. J., concurred.