## ST. LOUIS-SAN FRANCISCO RY. CO. v. McBRIDE.

No. 14882—Opinion Filed Nov. 25, 1924.

1. **Adverse Possession — Limitation of Actions—Defenses Untenable Against Railroad Right of Way Through Condemnation.**

The land in controversy in this case was condemned by the plaintiff railroad company for right of way and station ground purposes, and thereafter the defendants and their grantors went upon a certain part of the right of way in the town of Sulphur, Okla., and occupied the same for several years, when the railroad company desired to use the land so occupied for railway purposes, and brought ejectment against the defendants, who were occupying same, and defendants pleaded as a defense adverse possession and the statute of limitations. Held, that neither defense was good as against property condemned for right of way. The land in question was not granted for private use or disposal, but only for the quasi public uses named in the act under which it is condemned.

2. **Eminent Domain — Railroad Right of Way—Laches and Statutory Limitations as Ground for Accrual of Private Rights.**

Where property is condemned for right of way purposes by a railway company, neither laches on the part of the company nor any local statute of limitation can invest individuals with any interest in the tract, or with a right to use it for private purposes.

### 3. Same—Presumption that Whole of Right of Way Needed.

Neither courts nor juries nor the general public may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it as vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purpose of the railway as against a claim by an individual or an exclusive right of possession for private purposes.

### 4. Same—Right of Way Through Indian Land—Nonuser—Reverter.

In this case, the property in controversy was taken from the Chickasaw and Choctaw Nations under condemnation proceedings, and the railway company is entitled to said property as against any individual company, or corporation, so long as it uses it for the purposes for which it was condemned, and when the railway company ceases to use it for the purposes for which it was taken, it will revert to the Chickasaw and Choctaw Tribes of Indians, from whom it was taken, and until after such nonuser and reverter no private individual, company, or corporation can acquire any right of possession as against the railway company or the Chickasaw and Choctaw Nations.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Murray County; W. L. Eagleton, Judge.

Action by St. Louis-San Francisco Railway Company against George McBride and T. H. Slover. There was judgment for the defendants, and plaintiff appeals. Reversed.

W. F. Evans and Stuart, Sharp & Cruce, for plaintiff in error.

W. L. Lewis, for defendants in error.

Opinion by MAXEY, C. This is a suit in ejectment by the St. Louis-San Francisco Railway Company against George McBride and T. H. Slover to recover certain lands consisting of a part of its station grounds and right of way in the city of Sulphur, Okla. The plaintiff alleges that it is the owner of the above described lands and tenements by reason of having purchased the same from the Sulphur Springs Railway Company, which company became the owner of said lands by virtue of condemnation proceedings on the 22nd day of December, 1902, under the provisions of the act of Congress, approved February 28, 1902, commonly known as the Enid and Anadarko Act; that the Sulphur Springs Railway Company immediately went into possession of said lands and tenements under and by virtue of said condemnation proceedings, and that the plaintiff herein purchased all the right, title, and interest in and to said property so acquired by the Sulphur Springs Railway Company for a valuable consideration, and is entitled to all the rights and privileges which the Sulphur Springs Railway Company acquired by virtue of said condemnation proceedings. The petition then alleges that the defendants George McBride and T. H. Slover are asserting some right, title, or interest in and to the above described lands and tenements, and that they are in possession of a portion thereof, and refuse to vacate or surrender possession to the plaintiff herein, although demand has been made for possession. They pray judgment and that they be entitled to the exclusive possession of said land and the defendants be ordered and directed to surrender possession thereof to the plaintiff. The defendant George McBride filed a disclaimer, and the defendant T. H. Slover set up in his answer that they and their predecessors in title have been in possession of said land since August 28, 1903, and have been in the open, notorious, and peaceable possession of said land since said date. They plead adverse possession and the statute of limitations, and pray that their title be quieted to said real estate. The defendants deraign their title through T. R. Cook and T. F. Gafford; Gafford holding a quitclaim deed from Cook and McBride and Slover holding quitclaim deeds from Gafford.

The case was tried to the court without a jury and the court found for the defendants, and after unsuccessful motion for a new trial, the plaintiff appealed to this court by petition in error, with case-made attached, and the case is now regularly before this court for final disposition. There are six assignments of error in the petition in error, and they are argued under four heads in the brief. The first proposition urged by plaintiff in error is:

"A decision of this case involves the construction of an act of Congress and is, therefore, a federal question, and the decisions of the federal courts thereon are binding upon the state courts."

There is no question but what the act of Congress under which the land in controversy was condemned is a federal statute and that the Supreme Court of the United States is the final arbiter in cases of this character, and its decisions in the Townsend and Ely Cases are controlling. This court has on numerous occasions accepted this well-defined doctrine of law, and has held that the decisions of the Supreme Court of the United States are binding on such ques-

tions: Miller v. State, 3 Okla. Cr. 457, 106 Pac. 810; M., K. & T. Ry. Co. v. Walston, 37 Okla. 517, 133 Pac. 42; Ex parte Owen, 10 Okla. Cr. 284, 136 Pac. 197; A., T. & S. F. Ry. Co. v. Cooper, 71 Okla. 112, 175 Pac. 539; St. Louis, I. M. & S. Ry. Co. v. Bentley, 71 Okla. 165, 176 Pac. 250; St. Louis, I. M. & S. Ry. Co. v. Patterson, 75 Okla. 204, 182 Pac. 701. From the foregoing decisions it is plain that decisions of the Supreme Court of the United States, construing similar acts granting railroad rights of way through the public domain and Indian lands, should be followed by this court.

The second proposition stated is:

"The federal courts have without exception held that adverse possession will not run against railway rights of way obtained under similar act of Congress."

The land in controversy in this case was condemned from the Chickasaw and Choctaw Nations under the act of February 28, 1902 (32 Stat. at L. 43), and was an act to grant a right of way to the Enid & Anadarko Railway Company. It contains the width of rights of way, restrictions upon the use of same, and provides for a reversion to the Indian tribes in case of failure to use the property for railway purposes. The important section of said act as applied to this case is section 2, and is as follows:

"Sec. 2 (Width, — stations, etc. — reversion.) That said corporation is authorized to take and use for all purposes of a railway and for no other purpose, a right of way 100 feet in width through said Oklahoma Territory and said Indian Territory, and to take and use a strip of land 200 feet in width, with a length of 2,000 feet, in addition to right of way, for stations, for every eight miles of road, with the right to use such additional ground where there are heavy cuts or fills as may be necessary for the construction and maintenance of the roadbed, not exceeding 100 feet in width on each side of said right of way, or as much thereof as may be included in said cut or fill; Provided, That no more than said addition of land shall be taken for any one station; Provided further, That no part of the lands herein authorized to be taken shall be leased or sold by the company, and they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railway, telegraph, and telephone lines; and when any portion thereof shall cease to be so used such portion shall revert to the nation or tribe of Indians from which the same shall have been taken."

It will be observed that the closing paragraph of said section provides: "And when any portion thereof shall cease to be so used such portion shall revert to the nation or tribe of Indians from which the same shall have been taken." In this case, it would be the Chickasaw and Choctaw Tribes of Indians. Congress has passed many similar acts to this, and there can be no question but that Congress had the power to grant this right of way through the Indian country, provided only that a method for payment to the Indian tribes for the land taken was contained in the act. This question has been definitely decided in the case of Cherokee Nation v. The Southern Kansas Railway Company, 34 L. Ed. 295, wherein the Supreme Court of the United States sustained the right of Congress to enact legislation exactly similar to the Enid & Anadarko Act. The condemnation deed in question shows that the particular piece of land was condemned from, and that the money therefor was paid to, the Chickasaw and Choctaw Nations. The deed also shows a settlement with certain people claiming possessory rights to portions of said condemned property. It conclusively shows that T. R. Cook, who claimed the right of possession to this particular piece of land, was paid the sum of $150 for his improvements; and it is this man Cook from whom Gafford got a quitclaim deed. It is hard to see how it could be contended that Cook had anything to quitclaim. The Chickasaw and Choctaw Nations or tribes had received pay for the land from the railway company and Cook had received pay for his improvements. No other than the Chickasaw and Choctaw Nations could rightfully own or claim an interest in the land in question, and no right arising out of adverse possession could be effective as against the United States or the Indian tribes. This right of way was granted for a specific purpose, and so long as it is used for that purpose said property belongs to the plaintiff railway company, and if it ever reverts on account of nonuse, it must revert to the Indian tribes from whom it was condemned. This position is amply supported by a long line of decisions from the United States Court, and they have uniformly held that under such acts the title of railway companies, whether it be an easement or a limited fee, is not subject to being lost by reason of adverse possession. In the case of Great Northern R. C. v. Steinke, 67 L. Ed. 564, Chief Justice Van Devanter held as follows:

"The defendants interposed the defense of laches and also a local statute of limitations but the Supreme Court of the state did not rule on either. Neither was applicable to the case. The tract in question was not granted for private use or disposal, but only for the quasi public uses named in the act. In other words, the company received

the tract on the implied condition that it be devoted to those uses. A breach of the condition subjects the grant to a forfeiture by the United States; but neither laches on the part of the company nor any local statute of limitations can invest individuals with any interest in the tract, or with a right to use it for private purposes, without the sanction of the United States. Northern P. R. Co. v. Smith, 171 U. S. 260, 275, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794; Northern P. R. Co. v. Townsend, 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671; Northern P. R. Co. v. Ely, 197 U. S. 1, 49 L. Ed. 639, 25 Sup. Ct. Rep. 302; Kindred v. Union Pac. R. Co., 225 U. S. 582, 597, 56 L. Ed. 1216, 1219, 32 Sup. Ct. Rep. 780; Stuart v. Union P. R. Co., 227 U. S. 342-353, 57 L. Ed. 535, 543, 33 Sup. Ct. Rep. 338."

In the case of Northern P. R. Co. v. Townsend, 47 L. Ed. 1044, Mr. Chief Justice White also held that, under a similar congressional act, the right of way was not subject to title by adverse possession by third parties. In the course of the opinion he used the following words:

"Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad, and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes."

In the case of Northern P. R. Co. v. Smith, 43 L. Ed. 157, Mr. Justice Shiras made the following statement:

"Upon principle and authority we therefore conclude that neither the city of Bismarck, as owners of the town site, nor its grantee Smith, can, under the facts and circumstances shown in this record, disturb the possession of the Northern Pacific Railroad Company in its right of way extending 200 feet on each side of its said road. The finding of the trial court, that only 25 feet in width has ever been occupied for railroad purposes, is immaterial. By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance, and it was not competent for a court, at the suit of a private party to adjudge that only 25 feet thereof were occupied for railroad purposes in the face of the grant and of the finding that the entire land in dispute was within 200 feet of the track of the railroad, as actually constructed, and that the railroad company was in actual possession thereof by its tenants. The precise character of the business carried on by such tenants is not disclosed to us, but we are permitted to presume that it is consistent with the public duties and purposes of the railroad company; and, at any rate, a forfeiture for misuser could not be enforced in a private action."

The Supreme Court of Kansas, in the case of Missouri, Kansas & Texas R. Co. v. Watson, 87 Pac. 687, followed the Supreme Court of the United States in construing a similar act of Congress. We quote the following from page 696 of the opinion:

"The Supreme Court of the United States being the final arbiter in cases of this character, its decisions in the Townsend and Ely cases are controlling. It may be remarked, however, that the doctrine of those cases is not materially different from that upon which the decision of this court in U. P. Ry. Co. v. Kindred, 43 Kan. 134, 23 Pac. 112, was made to depend. In the Kindred Case the right of way granted by Congress to the Union Pacific Railway Company was under consideration. The opinion reads: 'The company does not own the fee. The validity of the act of Congress is not contested, nor is it denied that the railway company obtained a grant of 400 feet through the Indian reservation for its right of way. All that is claimed upon the question of title by the defendants is that the abutting landowners, by cultivation and inclosures, have held adverse possession of a part of the easement, or right of way of the railway company for a greater length of time than that required by the statute of limitations. In Railway Co. v. Alleen, 22 Kan. 285, 31 Am. Rep. 19, this court decided that where the railway company has only an easement, the proprietor of the soil retains the fee of the land, and his right for every purpose not incompatible with the rights of the railway company. This rule is recognized everywhere. Although the abutting landowners have cultivated and inclosed part of the right of way granted by Congress, this possession cannot be considered as hostile or adverse. It must be regarded as permissive only. If the fee of the land belongs to the United States, then the abutting landowners can acquire no title or claim by possession or limitation. Smith v. Smith, 34 Kan. 293, 8 Pac. 385. If the abutting landowners own the fee of the right of way, they may use the land in any way not inconsistent with the paramount rights of the railway company, but such use will not give them adverse possession so as to confer title,' U. P. Ry. Co. v. Kindred, 43 Kan. 134, 23 Pac. 112. The term 'easement' was not, perhaps, strictly accurate. The estate granted to the Union Pacific Company is corporeal in character rather than incorporeal, and corresponds to the limited fee for particular uses, subject to reverter, described in the Townsend Case. But the decision is that, whatever the extent of the railway company's ownership, its right of way is not exposed to private appropriation by means of adverse occupation."

To like effect, see Union P. R. Co. v. Snow, 58 L. Ed. 184; Union P. R. Co. v. Carges. 169 Fed. 459; Kindred v. Union P. R. Co., 168 Fed. 648; Northern P. R. Co. v. Haase, 49 L. Ed. 643; Union P. R. Co. v. Laramie, 58 L. Ed. 179; Northern P. R. Co. v. Concannon, 60 L. Ed. 342; D. & R. G. R. Co. v. Mills, 222 Fed. 481; Southern P. R. Co. v. Hyatt (Cal.) 64 Pac. 272; Central P. R. Co. v. Droge (Cal.) 151 Pac. 663; Oregon Shortline Ry. Co. v. Quigley (Idaho) 80 Pac. 401; Holland Co. v. Northern P. R. Co., 208 Fed. 598; Rio Grande & Western R. Co. v. Stringham, 60 L. Ed. 136.

There can be no question from the foregoing decisions but that the intention of Congress in passing these acts was to grant a right of way for railway purposes only. These cases uniformly hold that under such a grant the railroad company could not alienate this land as it pleased, and that if the railroad company could not alienate this land at its will, it was not subject to being acquired by adverse possession by others. In other words, the land could not be lost by indirection where it could not have been conveyed directly. The title to this land was in the Chickasaw and Choctaw Nations, subject only to the use for which it was granted to the railroad company, whether we call it an easement or a limited fee; whenever the railroad ceased to use the land for that purpose, the land would revert to the Chickasaw and Choctaw Nations, and not to the defendant in this action. The contention of defendant is that he acquired title to this land against the Chickasaw and Choctaw Nations by adverse possession. Of course, this contention cannot be sustained by any court. It is an elementary proposition that adverse possession does not run against the public lands of the government, nor does it run against the lands of Indian tribes. 2 C. J. 213; Long Bell Lumber Company v. Martin, 11 Okla. 192, 66 Pac. 328; Smith v. Williams, 78 Okla. 297, 190 Pac. 555; St. Louis & S. F. R. Co. v. Mann, 79 Okla. 160, 192 Pac. 231. It is clear that the defendants acquired no right whatever by using this land, the title to which remains in the Chickasaw and Choctaw Nations, subject to the right to be used for railroad purposes.

The third proposition urged by counsel for reversal is stated as follows:

"By virtue of the Constitution of Oklahoma, a railroad right of way is a public highway, and adverse possession does not run against a public highway."

Section 6 of article 9 of the Constitution of Oklahoma is as follows:

"Railroads—Public Highways — Office in State—Meeting of Directors. Railroads heretofore constructed, or which may hereafter be constructed in this state, are hereby declared public highways."

In the case of A., T. & S. F. R. Co. v. State, 23 Okla. 510, 101 Pac. 262, Justice Williams in the course of his opinion, makes the following statement:

"Railroads in this state are expressly declared to be public highways. Const. art. 9, sec. 6 (Bunn's Ed. sec. 210). This is merely declaratory of a pre-existing and well-recognized rule. (Olcott v. Supervisors of Fon du Lac, 16 Wall. 678, 21 L. Ed. 382; Beekman v. Saratoga & Schenectady R. Co., 3 Paige (N. Y.) 45, 22 Am. Dec. 679; Bloodgood v. Mohawk & Hudson R. Co., 18 Wend. (N. Y.) 9, 31 Am. Dec 313; Worcester v. Railroad Co., 4 Metc. (Mass.) 564, and this whether the railroads are built, owned and conducted by the state or private corporations, and whether exacting tolls or free. When built, owned and conducted by private corporations, they are subject to the use of the public only for a just compensation, but the public are entitled to reasonable use and service for such compensation without any discrimination. The railroads are to be held to a strict performance of the public duties enjoined upon them."

There have been some decisions from the state courts construing their own state laws to the effect that adverse possession will run against a railroad right of way, though under a different grant than through an act of Congress, however, those cases, which permit of adverse possession under their state law, recognize the rule that where by statute, or by the Constitution of the state, the same is prohibited, there can be no adverse possession. Oklahoma is one of those states which has provided against the acquisition of title by adverse possession. It has declared the railroad right of way to be a public highway, and it is an elementary proposition that adverse possession will not run against a public highway. In other words, adverse possession does not run against the government, or its various agencies. California has even gone so far as to hold in the absence of a constitutional or statutory provision that a railroad right of way is devoted to a public use and, therefore, adverse possession does not apply to the same. Southern P. R. Co. v. Hyatt (Cal.) 64 Pac. 272; Central P. R. Co. v. Droge (Cal.) 151 Pac. 663. The Supreme Court of the United States in the case of Olcott v. Supervisors, 21 L. Ed. 382, held that railroad rights of way are for public use. This case is cited with approval by Justice Williams in the case of Atchison, T. & S. F. Ry. Co. v State, supra. In the opinion in the case of Dukes v. Goodall, 82

S. W. 702, the Court of Appeals of the Indian Territory held that lands apportioned to the Chickasaw and Choctaw Nations are public lands, and cited decisions of the Supreme Court of the United States in support thereof, the same being Stephens v. Cherokee Nation, 43 L. Ed. 1041.

The fourth proposition relied on by counsel for plaintiff in error is stated as follows:

"Under the evidence of this case defendant has wholly failed to prove the requirements for a title by adverse possession."

Counsel cites a number of authorities to sustain this proposition. In the case of Wade v. Crouch, 14 Okla. 593, 78 Pac. 91, it was held that the parties seeking to establish a title by adverse possession must have claimed ownership of the property and have established that the premises were not held in subordination to any title or claim of others, but against all title and all claimants. It was therein held that mere possession or occupancy of the premises, no matter how long continued, would not ripen into adverse possession, in that instance under a void tax deed. The same doctrine was announced in Flesher v. Callahan, 32 Okla. 283, 122 Pac. 489. A case very applicable to the case we are considering is the Northern Pacific Ry. Co. v. Smith, 43 L. Ed. 157, and we quote from it as follows:

"Upon principle and authority we therefore conclude that neither the city of Bismarck, as owners of the town site nor its grantee Smith, can, under the facts and circumstances shown in this record, disturb the possession of the Northern Pacific Railroad Company in its right of way extending 200 feet on each side of its said road. The finding of the trial court, that only 25 feet in width has ever been occupied for railroad purposes, is immaterial. By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance, and it was not competent for a court, at the suit of a private party, to adjudge that only 25 feet thereof were occupied for railroad purposes in the face of the grant and of the finding that the entire land in dispute was within 200 feet of the track of the railroad as actually constructed, and that the railroad company was in actual possession thereof by the tenants. The precise character of the business carried on by such tenant is not disclosed to us, but we are permitted to presume that it is consistent with the public duties and purposes of the railroad company; and, at any rate, a forfeiture for misuser could not be enforced in a private action."

In the case of Central P. R. Co. v. Droge (Cal.) 151 Pac. 663, it was said:

"A grant by Congress to a railroad company of a strip 400 feet in width for a right of way for a trans-continental railroad is a conclusive determination by the United States that the entire strip is necessary for railroad purposes, and the company may not alienate or dispose of any part thereof for any other purpose."

In view of the foregoing authorities, we must hold that defendants are not entitled to this property, even though they proved adverse possession, nor are they entitled to it by reason of any statute of limitations, because it has been clearly established by the authorities herein cited that one cannot claim adverse possession against the right of way of a railroad company, and that the statute of limitation does not run against the right of way of a railroad company. That being the only defense that defendants have set up in this case, it follows that it was error for the trial court to have given judgment for the defendants, and the case should, therefore, be reversed and remanded to the trial court, with directions to set aside the judgment heretofore rendered and enter judgment for the plaintiff railroad company.

By the Court: It is so ordered.