HELENA & LIVINGSTON SMELTING & REDUCTION CO.
ET AL., APPELLANTS, v. NORTHERN PACIFIC RAIL-
WAY CO., RESPONDENT.

(No. 4,579.)

(Submitted January 6, 1922.  Decided January 30, 1922.)

[204 Pac. 370.]

*Railroads—Branch Lines—Abandonment—Action for Damages
—Complaint—Insufficiency.*

Railroads—Abandonment of Branch Line—Action for Damages by In-
dividual Does not Lie, When.
  1.  In an action by mining companies against a railroad company
  for damages resultant from the abandonment of a branch line con-
  necting their properties with the main line, which branch line had
  also been operated for the accommodation of the public, *held* that
  the complaint did not state a cause of action, in the absence of an
  express contract between the parties under which the railroad company
  for a valuable consideration had constructed the line and agreed to
  accept and transport material to and from plaintiffs' properties, plain-
  tiffs' damages being no different, except in degree, than those suffered
  by other members of the public.
Same—Abandonment of Spur—Damages—Action not Maintainable.
  2.  *Held*, that though a spur-track connecting plaintiff companies'
  concentrator with a branch line had been constructed and maintained
  by plaintiffs except that the rails had been furnished by defendant's
  predecessor, solely for the purpose of handling plaintiffs' products,
  its abandonment by defendant company did not give plaintiffs a cause
  of action for damages in the absence of an express contract between
  the parties.

*Appeal from District Court, Jefferson County; W. A. Clark,
Judge.*

ACTION by the Helena & Livingston Smelting & Reduction
Company and others against the Northern Pacific Railway
Company.  Judgment for defendant and plaintiffs appeal.
Affirmed.

---

1.  Right of railroad to abandon operation of its road, see note in
L. R. A. 1915A, 549.

206     Smelting etc. Co. *v*. Railway Co.   [Dec. T. '21

[62 Mont. 205.]

*Mr. C. E. Pew*, for Appellants, submitted a brief and argued the cause orally.

The authorities are practically unanimous to the effect that a railroad company cannot abandon one portion of its lines at will, but that authority must be conferred by the legislature or the Constitution of the state. Any change of line is an abandonment of the portion of the road which is removed from one place to another. A recent case dealing very extensively with this proposition is that of *Brown* v. *Atlantic etc. Co.*, 126 Ga. 248, 7 Ann. Cas. 1026, 55 S. E. 24. In that case the first question considered was: "Has a railroad company authority after it has located and constructed its line to abandon it, or a portion of it some nineteen miles in length, tear up its track and relocate such part of its line over a different route?" It will be observed that the proposition involved in this case is much stronger than that involved in the *Brown Case*. In that case it was merely a matter of changing the route, while here it is a case of abandonment and destruction of the line. (See, also, *State* v. *Dodge City etc. Ry. Co.*, 53 Kan. 329, 24 L. R. A. 564, 36 Pac. 755; *Cairo etc. Ry. Co.* v. *Woodyard*, 226 Ill. 331, 9 Ann. Cas. 55, 80 N. E. 882; note to *Lusby* v. *Kansas City etc. Ry. Co.*, 73 Miss. 360, 36 L. R. A. 510, 19 South. 239; *State* v. *Dodge City*, 53 Kan. 329, 24 L. R. A. 564 and note, 36 Pac. 755; *Northern Pac. Ry. Co.* v. *State*, 84 Wash. 510, Ann. Cas. 1916E, 1166, 147 Pac. 45; *Attorney General ex rel. Corp. Commr.* v. *Haverhill Gas Light Co.*, 215 Mass. 394, Ann. Cas. 1914C, 1266, 101 N. E. 1061.)

Counsel for the defendant insist that even though the removal of the track was wrongful, no right of action for damages arose in favor of the plaintiffs or any of their predecessors in interest; taking the position that any such action must be by the state and that the plaintiffs do not show any such special injury as would entitle them to sue. This contention is based upon an erroneous theory; first, for the reason that a

special interest different than that of the general public is shown, and, second, that in Montana, the only person who can sue is the one who is injured, and his injury need not be any greater than that of the general public, but, of course, he must show some injury. The first proposition is clearly shown by the allegation of the complaint. The second proposition is fully supported by the cases of *Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 829; *Union Pac. R. R. Co.* v. *Hall,* 91 U. S. 343, 23 L. Ed. 428 [see, also, Rose's U. S. Notes]; and see, also, *Southern Exp. Co.* v. *R. M. Rose Co.,* 124 Ga. 581, 5 L. R. A. (n. s.) 619, 53 S. E. 185; 4 R. C. L. 687.

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

As there was no contract, if there was any duty to maintain and operate the Boulder branch, the Corbin branch, or the connection with the Great Northern, it was a duty owing to the public generally, and a failure to perform such duty constituted a public wrong. It is elementary law that a private action cannot be maintained to redress a public wrong. The only instance where a public wrong will justify a private action is where some member of the public has suffered peculiar and special injury from such wrong. (*Saylor* v. *Pennsylvania Canal Co.,* 183 Pa. St. 167, 63 Am. St. Rep. 749, 38 Atl. 598; *Blackwell* v. *Old Colony R. R. Co.,* 122 Mass. 1.)

The principle of law that there can be no recovery by a private individual for a public wrong where the damages he suffers are no different, except in degree, from those suffered by the public generally, applies to damages resulting from the abandonment of a railroad. (*Kinealy* v. *St. Louis, K. C. & N. Ry. Co.,* 69 Mo. 658; *Beatty* v. *Louisville & N. R. Co.,* 176 Ky. 100, 195 S. W. 487.)

If the Corbin branch, like the Alta spur, had been constructed solely for the benefit and accommodation of the plaintiffs and their predecessors and had never been used by the

public, the abandonment of such branch would not give rise to
any cause of action in favor of the plaintiffs. (*In re City of
Detroit*, 156 Mich. 121, 120 N. W. 592; *Jones* v. *Newport News
& M. V. Co.*, 65 Fed. 736, 13 C. C. A. 95.)

There is another complete answer to the claim of the plain-
tiffs made in this case. The right to construct, maintain and
operate this railroad existed by virtue of legislative authority.
The legislative assembly might have expressly authorized the
abandonment and dismantling of this line of railroad, and
if it had done so, no one who has suffered damage would have
a right of action. (*Bryan* v. *Louisville & N. R. Co.*, 244 Fed.
650.) Now, if the legislative assembly could have permitted
the abandonment of this line of railroad, the state can over-
look and condone the offense, if any has been committed, in
abandoning the line without legislative authority, and the state
alone can complain of the wrong. (*Walsh* v. *Columbus etc.
R. Co.*, 176 U. S. 469, 44 L. Ed. 548, 20 Sup. Ct. Rep. 393
[see, also, Rose's U. S. Notes].)

The fact that the legislative assembly might have permitted
the abandonment of this line of railroad· argues conclusively
that the plaintiffs have no right of action. If the plaintiffs
may complain of the abandonment of the line, then the legis-
lative assembly could not have authorized the abandonment
because the effect would be to deprive the plaintiffs of their
property without due process of law. The plaintiffs have no
vested right in the continued service furnished by this railroad.
(*Day* v. *Tacoma Ry. & Power Co.*, 80 Wash. 161, L. R. A.
1915B, 547, 141 Pac. 347; *Asher* v. *Hutchinson Water etc. Co.*,
66 Kan. 496, 61 L. R. A. 52, 71 Pac. 813.)

MR. JUSTICE REYNOLDS delivered the opinion of the
court.

Plaintiffs have appealed from a judgment in favor of de-
fendant, entered after the sustaining of a demurrer to the
complaint and the failure of plaintiffs to plead further. The
action was brought to recover damages for the abandonment

of a certain branch railroad and spur-track, and the facts in connection with the matter can best be understood by a full statement of the allegations of the complaint and by liberal quotation therefrom. As set forth therein, the facts material to the consideration of the question involved in this case are:

"That all the parties are corporations; that the plaintiffs are the owners of the Alta mines described in an exhibit in the complaint; that the defendant and its predecessor in interest have been at all times mentioned in the complaint and the defendant now is the owner and operator of a certain railroad line running through the town of East Helena, Lewis and Clark county, Montana; that about the year 1882 there was a branch line extending from East Helena to Boulder, Montana, which branch was operated for the accommodation of passengers and other traffic; that during the year 1882 at the request of the then owners of the Alta mines, defendant's predecessor extended said branch of the East Helena-Boulder line from the town of Jefferson upon the Boulder branch to the town of Corbin, which was situated at the Alta mines, and on to the town of Wickes, at which a smelter belonging to the owners of the Alta mines was then situated, said line being used incidentally for the accommodation of the public, about a mile and a half of the track being laid upon the property of the plaintiffs and their predecessors in interest, without any agreement permitting the removal thereof; that the Alta mines and the mills, concentrators and other improvements thereon were located at the town of Corbin; that during or at about the year 1882 a spur line, called the Alta spur, was extended from the Corbin branch to the concentrator upon the Alta mines, which spur was constructed entirely upon the Alta property, and was constructed and maintained at the expense of plaintiffs and their predecessors in interest, except that the rails were furnished by the predecessor of defendant; that said spur was constructed without any agreement permitting its removal by defendant or its predecessors; that the Alta spur and the portion of the Corbin branch con-

structed upon the Alta property belong to the plaintiffs and
their predecessors in interest as fixtures and appurtenances to
said property.

"That said Corbin branch was constructed and maintained
principally, and said Alta spur was constructed and main-
tained solely, by reason of the extension and operation of said
Alta property, and particularly by reason of the then pro-
posed construction of a concentrator upon said property by
the predecessors in interest of the plaintiffs; that at the time
of the construction of said road said Northern Pacific Railroad
Company knew that the said concentrator would be so constructed
by reason of the said construction of said Corbin branch and said
Alta spur, and of the continued maintenance of a connection
thereof with the outside world;  *  *  *   that in reliance upon
the construction and continued maintenance of said Corbin
branch and Alta spur, and of the continuance of the connec-
tion of said branch and spur with the main line of said
Northern Pacific Railroad, or with some other railroad, es-
tablishing railroad communications between said Corbin branch
and other railroads running through the state of Montana, the
predecessors in interest of these plaintiffs constructed upon
said Alta property at said town of Corbin a concentrator of
great value and at great expense to the owners of said Alta
property, and for workings and equipment at said mine, and
spent large sums of money in development and operating said
mines and said concentrators and the other workings at and
upon said Alta property.

"That said Alta spur divided into two spurs or switches,
one called the high line and running above the said con-
centrator, which is situated upon the slope of a hill, said high
line being used for the purpose of conveying ore to said con-
centrator for treatment, and the other spur called the low line
and extending below the said concentrator, and being used for
the purpose of conveying concentrates therefrom to outside
points; that the site upon which said concentrator is con-
structed is particularly valuable for a concentration site by

reason of conditions there existing, and was particularly valuable for such purposes by reason of the existence of said railroad equipment and communication; that the plaintiffs and their predecessors in interest are and at all the times herein mentioned were the owners of certain water rights used for the operation of said concentrator; that the location of said concentrator at said point was particularly convenient and adapted to the proper use of said water rights in the operation thereof; that the location of said concentrator at the particular point where the same is located is also particularly convenient for the working of the ores produced by the said Alta mines, as well as for the handling of customs ores; that large quantities of customs ores have been treated in said concentrator by said plaintiffs and their predecessors in interest, and that with such railroad equipment the treatment of customs ores would be extremely profitable to plaintiffs in the future."

That the Corbin branch was also used by members of the public, especially the inhabitants of the town of Corbin; that some years since the defendant railroad company abandoned the Boulder branch and removed the track, and constructed a line connecting the Corbin branch at a point between Corbin and Wickes, with the line of the Great Northern Railroad Company, which passes to the west of the town of Corbin, thereby preserving contact with the outside world for the plaintiffs and their predecessors in the management of the Alta mines and other property; that during the month of December, 1913, and the month of January, 1914, without notice to or knowledge or consent of plaintiffs, or any of them, and without any authority of law, the defendant unlawfully and wrongfully, and in violation of its duty to plaintiffs and to the members of the public using said line, tore up the line connecting the Corbin branch with the Great Northern Railroad, and tore up the Alta spur, thereby leaving the Alta mines without any railroad connection with the outside world; that in order for the plaintiffs to reach the Great Northern Railroad, which is the nearest railroad to their property, it is

necessary to go up an extremely steep incline for a distance of about half a mile, making the transportation of goods and materials to, and the hauling of goods and materials from, the nearest point of communication extremely difficult and expensive, and much more so than while said Great Northern connection was still in; that the nearest point on the Northern Pacific Railroad which can be reached from the town of Corbin and the Alta property is East Helena, a distance of more than fifteen miles.

"That the absence of such railroad communications with said Alta property will greatly reduce the profit of operation of the same by the increased expense of transportation of goods and materials, and greatly impairs the value of the tailings situated upon said property; that said tailings contain large amounts of valuable minerals and metals, which can be extracted at a profit, and at much more profit and much more economically with said railroad communications, and especially with the existence and operation of a track corresponding with said low line spur, and with the railroad freight and switch service furnished over said line by said defendant railway company prior to the removal of said track; that these plaintiffs and their predecessors in interest have at all times been ready and willing to pay to the said defendant all reasonable and proper charges for hauling such freight and furnishing such switching service, whenever the same should be required or demanded of said defendant by these plaintiffs or their predecessors in interest."

That the defendant and its predecessors had received large revenues from the operation of said lines; that the plaintiffs had a vested right in the continued maintenance of said railroad connections; that the defendant had no right or authority to remove the tracks; and that by doing so the plaintiffs have been greatly injured and damaged.

"That it will be necessary, for the proper, economical, and profitable operation of said Alta property, for these plaintiffs to construct a railroad connection with the said Great

Northern Railway or with the main line of the Northern Pacific Railway Company, or at or near said town of East Helena, Montana, which is the nearest point at which connection can be made with any road of said defendant; that plaintiffs allege on information and belief that the expense of constructing a line connecting said Alta property with said Great Northern Railway over the line by means of which said Alta property was connected with said Great Northern Railway, as hereinabove alleged, and which is the shortest, cheapest, and most economical connection which can be made, would be upward of the sum of twenty-five thousand dollars ($25,000); that the said removal of said railroad connections by said defendant, without the substitution of other sufficient railroad connections by the said defendant, was unauthorized by law, and was without the consent of these plaintiffs, or any of them, or of their or any of their predecessors in interest, was unlawful and wrongful, and violative of the vested rights of these plaintiffs and their predecessors in interest in the continuance of said railroad lines and of the operation thereof; that the value of said Alta property and of said concentrator site and of said concentrator have thereby been greatly reduced; that the present owners of the said Alta property are now opening up and preparing to operate the same, including the mills, concentrator, and other portions of said plant, and including the working over of the said tailings; and that the absence of said railroad connections is extremely detrimental and injurious to the plaintiffs and said Alta property.''

It is alleged that, by reason of the abandonment of the line and the severance of railroad connections between the Alta property and the outside world, plaintiffs have been damaged in the sum of $25,000.

The complaint does not ask for any damages by reason of [1] the conversion of any of the property of plaintiffs, but is exclusively an action for damages for abandonment of the railroad branch track and spur, whereby plaintiffs were left without any railroad connection with the outside world. The

sole question presented, then, is whether or not such an action for damages will lie under the circumstances set forth in the complaint in this case.

Plaintiffs have not cited any case in which damages have ever been allowed under such circumstances. They have cited the case of *Brown* v. *Atlantic etc. R. Co.*, 126 Ga. 248, 7 Ann. Cas. 1026, 55 S. E. 24, to the effect that in an action by private persons a railroad company can be enjoined from abandoning an established track. In that case the railroad company acquired a new line between two certain towns about nineteen miles apart, and thereupon proposed to abandon the old line. Injunction was brought by certain individuals having property and business interests which would be seriously prejudiced by the abandonment of the old track, and the injunction was issued. In that case it was contended that the state alone was entitled to bring such an action, but it was held that, inasmuch as it appeared that the plaintiffs would suffer special damages by reason of their residences and the location of their businesses and investments, and shipments made by them, and the circumstances disclosed by the evidence, there was no reason why they could not bring the action to prevent the removal of the road if wrongful. It is argued that, inasmuch as plaintiffs in that case could maintain such an action, therefore they would also have the right to maintain an action for damages. The conclusion reached by plaintiffs, however, is not sound, for it has been well established in many states, including this one, that a private person may move for *mandamus* to enforce a public duty not due to the government as such, or for an injunction to prevent the violation of such duty, without the intervention of the state as a party. This is permitted upon the theory that the individual, as a member of the public and suffering some of the damage that affects the public generally, is entitled to bring the action, not only for himself, but as the agent and in behalf of the public and others likewise situated.

When we come to consider the question of the right to maintain an action for damages, then complications arise which do not appear in an action for *mandamus* or injunction, for in the former is involved the attempt of the individual to secure for himself alone damages which he has suffered, but which are of the same nature as those suffered by other members of the public, although there may be a difference in the degree of the damage. If plaintiffs in this case had an express contract with defendant, whereby for a valuable consideration it had constructed the tracks in question, and had agreed to accept and transport merchandise to and from plaintiffs' mines, a different question might have been presented, although even then it is a question whether or not such a contract could be enforced, if it should prove prejudicial to the public interest. This principle is illustrated in the case of *McKell* v. *Chesapeake & Ohio Ry. Co.*, 175 Fed. 321, 20 Ann. Cas. 1097, 99 C. C. A. 109. In that case the railway company built a branch line to the mines of plaintiff upon an express contract that the plaintiff would guarantee to furnish to the railway company not less than 100,000 tons of coal per year. In that case there were involved mutual promises whereby the plaintiff agreed to make shipment of a minimum amount of coal over the railroad of the defendant company and the company agreed to accept and transport it. Under such circumstancees, it can readily be understood why the court should enforce the contract and compel its performance by the railway company, so long as the guaranteed shipment was furnished. In disposing of the question, the court used this language: ''Turning again to the stipulations of the contract, we see how impossible it is to believe that the parties intended that it should be terminable at any time, when either party should be so minded. On the contrary, it seems perfectly clear that they intended it should have a permanent duration. Its objects could not otherwise be fulfilled. What would the railway company have said if, after it had built the railroad and made ready to receive the coal, McKell had given it notice

that he would neither sell the coal nor ship it by that road? Its disappointment would have been complete, and justly so. Or suppose the railway company, on McKell's having deeded the right of way, turned over the survey and incurred the expense of making preparations for mining coal and making coke, should have refused to go on and take the coal as agreed, either for transportation at the specified rate, or purchase it at the specified price? It would undoubtedly have been a surprise to McKell and a reversal of his plans and expectations. He had relied upon the contract as the means of promoting his enterprise.''

But in the case under consideration by this court, there was not any contract whatever between plaintiffs and defendant or their predecessors in interest. There being no contract, it must be presumed that the branch line and spur were constructed by the railway company in the hope and expectancy of receiving sufficient business from the Alta mines and from the public in general to make the investment a profitable one; but there was nothing in the relationship between the plaintiffs and the defendant, or their predecessors in interest, any different than existed between the defendant and any other member of the public to be served by the branch line, except that probably the business from the Alta mines was of more importance and the privilege of transportation meant more to it. However, there was nothing to prevent any other member of the public opening up mines, and making connection with the railroad company's line, and deriving the same benefit from the transportation which it afforded. The difference between plaintiffs' damages, due to the removal of the track, and that of any other member of the public, was not in the character of the damage but merely in its degree. The plaintiffs and their predecessors in interest were merely in the same position that any other person is who has made an investment and embarked in a business in reliance on the continuance of a certain public improvement, but in so doing takes his chance as to the continuance of such improvement. There are not

many cases to be found upon this subject, but reference to a few of them will illustrate the point here made.

In the case of *Beatty* v. *Louisville & M. R. Co.,* 176 Ky. 100, 195 S. W. 487, action was brought for damages by reason of the removal by defendant of a certain depot at St. Helens. The railway company had made a change in its line, shortening the distance, and in so doing deemed it to its advantage to abandon this depot. Plaintiff had erected a warehouse near this depot, and had conducted a mercantile business in it for a considerable length of time, all in reliance upon the advantages given by the location of this depot. In his action he claimed an implied contract between himself and the defendant to forever maintain this depot or to respond in damages for its removal. In disposing of this question, the court used the following language: "Basing his right to recovery upon that case, it is insisted that plaintiff has shown a peculiar and special damage different from that of other members of the public, and he is therefore entitled to maintain this suit. This contention is made to avoid the universally recognized rule that no private individual may complain because of consequential damages from the refusal to perform public or *quasi*-public duties, unless the damages which he sustains are peculiar and different from those of other members of the public. An examination of the petition, however, even if this principle would apply here, will show that no such special or peculiar damages are shown in this case. It is simply the consequential damage which plaintiff claims to have sustained because of the removal of the depot from St. Helens. This same kind of damage might be said to have been suffered by all of the adjacent property owners. The fact that plaintiff's damage may have exceeded that of his neighbors constitutes a difference in degree only and not in kind."

In the case of *Blackwell* v. *Old Colony R. R. Co.,* 122 Mass. 1, plaintiff was engaged in the business of buying and selling certain merchandise and transporting same by water. Plaintiff owned a wharf upon a river leading to the sea, and used the

river and wharf in transporting his merchandise. Defendant constructed a bridge across the river which completely destroyed its navigability. Plaintiff brought action for damages by reason of the construction of this bridge, thereby destroying his business. It was held that plaintiff could not recover damages, and in so holding the court expressed itself as follows: "The direct injury alleged is to the navigation of the stream, to which the plaintiff is entitled only in common with the whole public; and the remedy for that injury is by indictment, and not by private action. The fact that the plaintiff alone now navigates the stream, or has a wharf thereon at which he carries on business, only shows that the present consequential damage to him may be greater in degree than to others, but does not show that the injury is different in kind, or that other riparian proprietors and the rest of the public may not, whenever they use the stream, suffer in the same way. The case has no analogy to those in which an obstruction in a navigable stream sets back the water upon the plaintiff's land, or, being against the front of his land, entirely cuts off his access to the stream, and thereby causes a direct and peculiar injury to his estate, or in which the carrying on of an offensive trade creates a nuisance to the plaintiff."

A similar case is found in *Saylor* v. *Pennsylvania Canal Co.,* 183 Pa. St. 167, 63 Am. St. Rep. 749, 38 Atl. 598, in which the court said: "The business in which the plaintiff was engaged was open to all persons using or desiring to use the canal for the purpose for which it was constructed. The privilege he exercised and enjoyed was not special or peculiar, nor was the injury he alleges he sustained by the neglect or failure of the company to repair or reconstruct the highway it was required, as a purchaser, to maintain. The privilege was such as any person who chose to exercise it was entitled to, and the injury done by the abandonment of the highway was not to the plaintiff alone, but to him in common with the public. The difference, if any, was only in degree, and this will not sustain his suit."

Plaintiffs, however, contend that in this case the spur in [2] question was constructed solely for the purpose of handling the business of plaintiffs and their predecessors in interest; that there is involved in this case more than the damage that may result to them merely as members of the public; that their interest is special, and that therefore the reasoning of the cases hereinbefore cited does not apply. However, the courts have gone further than is shown in the cited cases, and have held that when a side-track is constructed specially to serve a particular business and the proprietor of such business is the one vitally interested. in its maintenance, yet such proprietor has no cause of action for damages by reason of the side track being abandoned or by reason of acts of the railroad company in changing its track so that he is damaged in the use of his side track.

In *In re City of Detroit,* 156 Mich. 121, 120 N. W. 592, the American Car and Foundry Company brought action to recover damages due to the fact that the Michigan Central Railway Company changed the grade of its roadbed, resulting in the necessity of the Car and Foundry Company changing its plant and buildings to correspond with the elevation of the railroad so as to preserve its connection with the railroad, at an actual expense to it of $25,000. In holding that such damages could not be recovered, the court disposed of the question in the following language: "If there is any liability on the part of the railroad company, it must have been created by contract between the two companies, or by some constitutional or statutory provision. The record contains no evidence of any contract, verbal or written, unless one is to be implied from the mere fact that some time, long ago, a switch-track was constructed into the plant of the Car & Foundry Company. In the construction of these switches or side-tracks to manufacturing plants, three parties are interested—the manufacturer, desiring the most inexpensive way to get his wares to market; the railroad company, in obtaining business and profit by transporting such wares, and the pub-

220  Smelting etc. Co. *v.* Railway Co. [Dec. T. '21

[62 Mont. 205.]

lic, who consume or use the product of the manufacturer. If the railroad company considers that the transportation of the product of the manufacturer will compensate it and yield it a profit, it usually, upon request, puts in the necessary side-track and switches. By the construction of such a track at the request of one and the assent of the other, no contract is implied binding either to the continuance of such arrangement for any specified time. Clearly the manufacturer has made no contract by which he is liable to the railroad company in damages for discontinuing its shipment at any time or for any reason. He may move his plant within a month after the construction of the side-track. He may conclude to ship his goods to market by other railroads or by other routes. I am not aware that any claim was ever made that the manufacturer is bound by such an arrangement to ship his goods over the one railroad. Neither can a contract be implied on the part of the railroad company to maintain the side-track and ship the goods of the manufacturer at a loss or without profit.''

Another case in point is the case of *Jones* v. *Newport News & M. V. Co.*, 65 Fed. 736, 13 C. C. A. 95. In that case the railway company had built a side-track to accommodate the business of plaintiff, who had constructed a coal-tipple, storage bins and office building for the purpose of carrying on a coal business, and for a long time the railway company had delivered coal to plaintiff over the side-track. Thereafter the railway company tore up and removed the switch and all the iron forming the railroad from the main line of the road to the coal-tipple, and refused to restore it or to deliver to plaintiff coal at his coal-tipple, greatly to his prejudice. Action was brought to recover the damages resulting from this act, and the court, in an opinion by Judge Taft, held that there was no duty on the part of the railway company to maintain the switch and side-track for any definite time, using the following language: ''The proposition put forward on plaintiff's behalf is that when a railroad company permits a switch con-

nection to be made between its line and the private warehouse of any person, and delivers merchandise over it for years, it becomes part of the main line of the railroad, and cannot be discontinued or removed, and this on common-law principles and without the aid of a statute. It may be safely assumed that the common law imposes no greater obligation upon a common carrier with respect to a private individual than with respect to the public. If a railroad company may exercise its discretion to discontinue a public station for passengers or a public warehouse for freight, without incurring any liability or rendering itself subject to judicial control, it would seem necessarily to follow that it may exercise its discretion to establish or discontinue a private warehouse for one customer. * * * If the directors have a discretion to establish and discontinue public stations, *a fortiori* have they the right to discontinue switch connections to private warehouses. The switch connection and transportation over it may seriously interfere with the convenience and safety of the public in its use of the road. It may much embarrass the general business of the company. It is peculiarly within the discretion of the directors to determine whether it does so or not. At one time in the life of the company, it may be useful and consistent with all the legitimate purposes of the company. A change of conditions, an increase in business, a necessity for travel at higher speed, may make such a connection either inconvenient, or dangerous, or both. We must therefore dissent altogether from the proposition that the establishment and maintenance of a switch connection of the main line to a private warehouse for any length of time can create a duty of the railroad company at common law forever to maintain it. There is little or no authority to sustain it.''

While the point at issue in this case has never been decided by this court, yet the principle enunciated in the foregoing cases is recognized in the opinion of this court in the cases of *Root* v. *Butte, A. & Pac. Co.*, 20 Mont. 354, 51 Pac. 155, and

*State ex rel. Knight* v. *Helena P. & L. Co.*, 22 Mont. 391, 44
L. R. A. 692, 56 Pac. 685.

It seems to us clear that the question of removal or abandonment by a railway company of its track is a matter of public concern, and, in so far as the rights of the public may enter into it, just so far may the rights of an individual as a member of the public be considered. When there is no substantial damage to the individual aside from that which may occur to all other members of the public, although differing in the degree of the damage, there cannot be any right of action to recover damages by reason of the removal or abandonment of the road, unless it may be in a case in which there is an express contract governing the relations of the parties as hereinbefore expressed. The track in question was laid undoubtedly as a matter of profit for the railroad company and benefit to the plaintiffs, but neither one entered into any obligation to serve the other. Plaintiffs could at any time cease operations, or refuse to deliver its product to the railway company for transportation. On the contrary, the railroad company, at any time it deemed it to its own interests so to do, could abandon the track and cease to operate the same. Plaintiffs, having no contract relations with the defendant, cannot have any right of action for damages.

We are unable to find any authority to the contrary, and therefore must hold that the order sustaining defendant's demurrer to the complaint and entering judgment for defendant upon plaintiffs' failure to plead further was correctly entered. Of course, it must be understood that in this case the question as to the right of the state, through its Public Service Commission, to prevent an abandonment of any railroad or branch line is not involved nor considered.

The judgment of the trial court is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Cooper, Holloway and Galen concur.