**MONTGOMERY et al. v. ATCHISON, T. & S. F. RY. CO.**

**No. 1473.**

Circuit Court of Appeals, Tenth Circuit.
March 26, 1937.

Suits & Jeffrey, of Oklahoma City, Okl., and Gordon Stater, of Los Angeles, Cal., for appellants.

Robert M. Rainey, Streeter B. Flynn, and Geo. M. Green, all of Oklahoma City, Okl., for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and JOHNSON, District Judge.

BRATTON, Circuit Judge.

This is an action to recover damages from the Atchison, Topeka & Santa Fé Railway Company for the asserted wrongful discontinuance and removal of a switch or industrial track, and for the alleged wrongful obstruction of a roadway over and across the right of way of the company.

These facts were set forth in the amended petition with its attached exhibits: Plaintiffs own lots 25 and 26 in block 7 in Oklahoma City. The city passed ordinance No. 203 in 1899, authorizing the company to build, maintain, and operate a switch in the alley running east and west through block 7, beginning at the west line of the company's right of way and extending west to the west line of lot 5. It provided that the company should cease to operate the switch upon the desire and request of the owners of two-thirds of the abutting property. The switch was built in 1899, and the property owners have not requested its discontinuance and removal. The city and the company entered into a contract in 1927, which provided for the elevation of the tracks of the company in order to eliminate grade crossings. The contract expressly provided that it was subject to the approval of the Corporation Commission of the state. While engaged considering the matter of the elimination of grade crossings within the city, the commission took up the contract. Hearings were conducted and in January, 1931, the commission entered its order disapproving the contract, but directing and ordering the company to elevate its tracks and construct specified subways at First, Second, Third, Fourth, Fifth, Sixth, Fifteenth, Seventeenth, and Main streets, and at Chickasaw, Choctaw, Grand, and Reno avenues, in accordance with its plan Z–3. In March thereafter, the city passed ordinance No. 4201 granting the company the right and authority to construct, maintain, and operate an elevated track in the alley. The

ordinance provided that it should not become effective unless the company filed a written acceptance of its terms within fifteen days; and the acceptance was filed within that time. The elevated track was not constructed and use of the switch was discontinued in August, 1933. A five-story building was constructed on the lots belonging to plaintiffs and used for wholesale purposes. It was dependent on the switch for the movement of incoming and outgoing freight in connection with the conduct of the business, and it would not have been constructed except for reliance upon the existence, maintenance, and operation of the switch.

For about thirty years, a roadway extending southward from the east end of the alley upon and along the right of way to a point of intersection with Main street had been in common use. Plaintiffs and other owners of abutting property had ingress and egress to the alley and to their property through its use. The company knew of such use and acquiesced in it; and it leased portions of its right of way adjacent to such roadway to persons, firms, and corporations who used the roadway in common with owners of abutting property and the public. In June, 1934, the company closed the alley at its east end by a barrier or guard consisting of steel rails driven into the ground several feet, and later caused a building to be erected across it. The alley is so narrow that vehicles traveling eastward to and from the property of plaintiffs cannot be turned around at the east end, it thus becoming a dead-end alley. Plaintiffs and other owners of abutting property were thus denied use of the roadway and their property became bottled up. Plaintiffs' property suffered a diminution in value as the result of the removal of the switch and the termination of use of the road along the right of way.

The court sustained a demurrer to the amended petition. A written election to stand upon the pleading was filed, and judgment was entered dismissing the action.

■ Plaintiffs press the contention that the two ordinances and the written acceptance of the latter constituted an agreement between the city and the company for the benefit of the public; that the company wrongfully breached it by discontinuing and removing the switch for which plaintiffs are entitled to recover damages for the decrease in value of their property. The company, as well as its predecessor, the Southern Kansas Railway Company, was organized under the laws of Kansas. Its general corporate functions are the construction, maintenance, and operation of a commercial railroad system with its tracks, stations, terminal facilities, and rolling equipment. The right essential to the exertion of those general functions was granted by the state of Kansas. The right to construct its lines and engage in business in the then Indian Territory came from the United States, Act July 4, 1884, 23 Stat. 73; and all rights which existed at the time of statehood were continued unaffected by the change in form of government. Oklahoma Constitution, Schedule § 1. The state is the sovereign ordinarily clothed with authority to grant such a right, not a city or town. The privilege of constructing, maintaining, and operating the switch or industrial track in question was not essential to the exercise of the general functions and purposes of the corporation. Instead, it was in essence and effect an incidental and local privilege which the city was empowered to grant or withhold. Although such a grant is sometimes inaccurately called a franchise, it is a license in the nature of an easement. McPhee & McGinnity Co. v. Union Pac. R. Co. (C.C.A.) 158 F. 5; Belington & N. R. Co. v. Town of Alston, 54 W.Va. 597, 46 S.E. 612; Lincoln St. Ry. Co. v. City of Lincoln, 61 Neb. 109, 84 N.W. 802; Chicago City Ry. Co. v. People, 73 Ill. 541.

■ It is unnecessary to cite and discuss the cases in which it is held that, if a public service corporation wrongfully ceases to perform its corporate functions, such as the distribution of water, gas, or electric energy during the existence of its franchise, persons who suffer loss in property values as the direct and proximate result of such breach may recover damages, because such cases have no application here. The privilege of constructing, maintaining, and operating the switch as a mere incident to the exercise of the general corporate functions of the company was a license without fixed duration. In the absence of a controlling constitutional provision or statute, the removal of a switch constructed and operated under such a license is no basis in law for the recovery of damages for loss in value of abutting or adjacent property. Jones v. Newport News & M. V. Co. (C.C.A.) 65 F. 736.

■ Our attention has been directed to only one provision of the Constitution or

statutes in Oklahoma which relates to the construction and operation of switches or industrial tracks for the benefit of private industries. Section 33, article 9 of the Constitution, provides in substance that, when the Corporation Commission shall reasonably determine that the business of any person, firm, or corporation owning or operating any coal, lead, iron, or zinc mine, sawmill, grain elevator, or other industry is sufficient to justify it, such person, firm, or corporation may, at its own expense, build and keep in repair a switch leading from the railroad to the mine, mill, elevator, or other industry; that the railroad company shall furnish the switch stand, frog, and other necessary materials for making connection with the switch under such reasonable regulations as the commission may prescribe and shall make connection therewith, but the owner of the industry shall pay the actual cost thereof; and that the company shall be subject to a penalty if it fails to furnish and place such materials and operate the switch. Two essentials are requisite to invoke the provisions of that section. One is that the quantity of business be sufficient to justify the switch, and the other is that the owner of the industry defray the expense of construction and repair. Chicago, R. I. & P. Ry. Co. v. State, 23 Okl. 94, 99 P. 901; Atchison, T. & S. F. Ry. Co. v. State, 24 Okl. 616, 104 P. 908; St. Louis & S. F. R. Co. v. Haywood, 25 Okl. 417, 106 P. 862; St. Louis & S. F. R. Co. v. ·Zalondek, 28 Okl. 746, 115 P. 867; Chicago, R. I. & P. Ry. Co. v. State, 83 Okl. 161, 201 P. 260. Plaintiffs failed to allege the quantity of business which would be furnished or their willingness to bear the cost of maintenance and repair. Manifestly they made no attempt to bring themselves within the requirements of the provision and they do not attempt to invoke its terms.

■ It is urged that the order of the commission required the company to elevate its tracks in accordance with plan Z–3, which included an elevated switch or track in the alley. Conceding that the plan included an elevated switch in the alley, and assuming without deciding that the commission was clothed with authority to require the company to elevate the switch, we do not share that construction of the order. It required the company to elevate its tracks and to construct suitable and proper subways at the intersection of its line of railway with the streets previously enumerated as provided in plan Z–3; but compliance with the plan was confined to elevation at those streets. It did not include the switch. The terms of the order are plain and they lend no support to the argument.

■ The switch was constructed with reference to conditions existing at that time. The thirty-four years which intervened prior to its discontinuance brought rapid growth and wide expansion in Oklahoma City which, in the judgment of the commission, necessitated elevation of the tracks in the interest of public safety and welfare. That elevation made discontinuance of the switch or its elevation inescapable. It was discontinued in such circumstances and the company was not subjected to liability for decrease in value of abutting property. Jones v. Newport News & M. V. Co., supra; Otis Elevator Co. v. City of Chicago, 263 Ill. 419, 105 N.E. 338, 52 L.R.A.(N.S.) 192; Palmer v. Delaware, L. & W. R. Co., 277 Pa. 1, 120 A. 668; Helena & L. Smelting & R. Co. v. Northern P. R. Co., 62 Mont. 205, 204 P. 370, 23 A.L.R. 546, and notes.

■ The remaining question is whether by long-continued use plaintiffs and others acquired a prescriptive right of passageway over and along the right of way from the east end of the alley southward to Main street. It is stated in the brief of the company, and not challenged in the reply brief of plaintiffs, that the right of way in question is a part of that acquired under the terms of the Act of July 4, 1884. 23 Stat. 73, supra. That statute expressly vested in the Southern Kansas Railway Company the right to acquire a right of way through the Indian Territory; specified the manner in which the Indian nations should be compensated; and provided that full compensation should be made before the railway was constructed through lands held by individual occupants; that no part of the land granted should be used except for railroad, telegraph, and telephone lines; and that, if any portion should cease to be so used, such portion should revert to the nation of Indians from which it came. Individuals cannot acquire for private purposes a prescriptive right by long use or occupancy in lands which were specifically granted in that manner and with such limitations, without the sanction of the United States. Northern Pacific Ry. Co. v. Smith, 171 U.S. 260, 18 S.Ct. 794, 43 L.Ed. 157; Northern Pacific Ry. Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044; Northern Pacific Ry. Co. v.

Ely, 197 U.S. 1, 25 S.Ct. 302, 49 L.Ed. 639; Union Pac. R. Co. v. Snow, 231 U.S. 204, 34 S.Ct. 104, 58 L.Ed. 184; Rio Grande Western Ry. Co. v. Stringham, 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136; Great Northern Ry. Co. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed. 564; Kindred v. Union Pac. R. Co. (C.C.A.)·168 F. 648; St. Louis-San Francisco Ry. Co. v. McBride, 104 Okl. 216, 231 P. 284. It is not contended that such sanction has been given in any manner.

The judgment is affirmed.