SARAH C. SCULLY, APPELLANT, V. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLEE.

9 N. W. (2d) 207

FILED APRIL 9, 1943. No. 31480.

*Halligan, McIntosh & Feltz,* for appellants.

*R. O. Canaday, P. E. Boslaugh, R. H. Beatty* and *M. M. Maupin, Contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

An amended petition was filed by the plaintiff, Sarah C. Scully, which set out 41 separate causes of action, 40 of said causes of action being assigned to her for the purpose of collection. All of the causes of action involved the right to recover damages for property located in the town of Keystone, Keith county, Nebraska, resulting from the construction of a dam and reservoir by the defendant district, four miles west of the town, and the condemnation and removal by the defendant of the Union Pacific railroad tracks from the town of Keystone, thereby entirely depriving the town of its railroad services. To this amended petition, defendant district filed a demurrer, which was submitted to the trial court. Demurrer sustained. Plaintiff appeals.

The allegations upon which the cause of action is based are set forth in paragraphs 1 to 6 of the first cause of action, which may be condensed as follows:

(1) The defendant is a public corporation, duly organized under the laws of Nebraska, with its principal place of business in Hastings, Adams county. It is engaged in constructing works of internal improvement necessary to develop electric power. A dam has been built across the North Platte river at a point four miles west of Keystone, which will impound waters, making a reservoir which will have a capacity of two million acre feet of water, which stored water will be used to generate electric power, as well

as to irrigate certain lands in the Platte valley approximately 100 miles east of said dam and reservoir.

(2) The town of Keystone, Keith county, Nebraska, was located by the Union Pacific Railroad Company in 1906, when it built a branch line up the North Platte river from O'Fallons, Nebraska, into Wyoming. The said railroad company constructed a depot, section house, stockyards, water tank, and thereafter the general public constructed a post office, church, hotel, and various business properties, and the town attained a population of some 200 people. In addition to the railroad facilities, state and county highways connected the town with other towns and with farming and ranching enterprises located in that territory, all of which created a special value in the property in said town.

(3) Plaintiff alleged that the defendant has constructed an on-river dam, approximately two miles in width and 160 feet in height, which dam creates a reservoir in the river which will reach back 20 miles west from said dam, and the water just above the dam will be about 150 feet in depth; that the defendant district has appropriated to its own use all of said railroad facilities from a point more than five miles east of the town of Keystone to 30 miles west of the town of Keystone, as well as all highways leading to Keystone; that such appropriation by the district was by right of eminent domain.

The district entered into a contract with the Union Pacific Railroad Company to remove the entire railroad line for a distance of more than 30 miles and to construct a new railroad line in place thereof, the new railroad line being located approximately two miles north of the town of Keystone. It is alleged that the depot of the present Keystone and its railroad facilities, as now locoated on the new line some two miles north of the old town, are in a location entirely unfit for the establishment of a townsite; that the removal of said railroad has destroyed all of the public uses and facilities appurtenant to said real estate, including the state and federal highways, and has thus destroyed the bus-

iness and wholly cut off the accessibility of the town of Keystone to its former trade territory, thus creating a special damage to the property therein.

(4) Plaintiff alleged that above the dam aforesaid there will be stored some two million acre feet of water in a reservoir; that by danger of breakage, leaks, and floods therefrom, a hazard is created, but that plaintiff had no cause of action to enjoin the construction of said dam and reservoir, the same being for a public use, and therefore the landowners were relegated to an action at law to recover damages by reason of the depreciation and damage to the value of their property; that prior to 1940 Keystone was a thriving business locality, with no vacant buildings or residences; that in Keystone there were lumber yards, warehouse, furniture, grocery, clothing and other stores customary in such a town, but that these lines of business have been removed from the town, or abandoned, as they could not exist cut off from railroad facilities and public highways.

(5) Plaintiff alleges that all of the property had a special value, as it abutted on the streets in the town of Keystone which connected with the railroad facilities, and the public use thereof, which have been taken away, thereby causing a special damage to said property.

(6) Plaintiff alleges that, by reason of the construction of said dam and reservoir, Keystone has been changed from a village, with property therein of considerable value, to an abandoned village, and the special value of property therein has been depreciated until there is no market value thereof, its only value being the salvage value of the improvements upon said real estate for removal to another locality.

The plaintiff then described in paragraph 7 the lots and blocks which she owned, together with a two-story dwelling-house, garage, cement sidewalk, foundation, trees, shrubbery, and certain other property on block 2 in the town of Keystone, upon which was constructed a store building, a hotel building, rooming-house, and dance hall, also certain vacant lots, all of which were of the value of $14,350, with a salvage value of $750, leaving the net damages due from the defendant district $13,600 on the first cause of action.

The amount due on the other 40 causes of action is alleged to be $147,090.30, making total amount of damages claimed by plaintiff from defendant of $160,690.30.

There is attached to the petition a map, prepared by the engineers of the Union Pacific Railroad Company, showing the old line of 32.37 miles which is to be abandoned, and the new line of 33.16 miles to be built. There is also attached a photostatic copy, of 14 pages, of the agreement entered into between the Union Pacific Railroad Company and the defendant district, and also agreed to by the Western Union Telegraph Company, said agreement being signed by W. M. Jeffers, president of the Union Pacific Railroad Company, D. W. Kingsley, president of the defendant district, and A. D. Bradley, general manager of the Western Union Telegraph Company, which agreement provides generally that the district shall buy a new right of way and convey the same by warranty deed to the railroad company, with abstract showing good title thereto, free from encumbrance, and shall furnish all material and construct to the satisfaction of the railroad company the new line of railroad, including bridges, culverts, signals, boundary fences, railroad crossings, cattle guards, sand fences, snow fences, and warning signals, and according to approved plans and specifications, removing and repairing certain station buildings, and other buildings now located on its present line of railroad, at the towns of Keystone, Martin, Lemoyne, Belmar and Ruthton, to their new locations on the relocated line between mileposts 23.58 and 55.95, and all placed in proper condition for use in a manner satisfactory to the railroad company, including the complete reconstruction of the Western Union Telegraph Company line along said new line, all to be done at the cost and expense of said defendant district, free and clear of all claims, liens and encumbrances.

It is further provided in said agreement that, after construction and completion of the new railroad line and its acceptance by said company, the district shall and will pay to the railroad company, in addition to the cost thereof;

the sum of $229,101, which said company will accept as full payment for the additional expense of maintenance and operation of the new line, and thereupon the old right of way of the railroad line shall be conveyed to the district by quitclaim deed, free of mortgages and liens.

It is further set out in said agreement that the district will indemnify and hold harmless said railroad company from all claims, demands, damages, judgments, costs, and expenses of whatever nature sustained by others than the railroad company, resulting from the relocation of said line of railroad and the abandonment of its present line of railroad.

The demurrer filed to the amended petition having been argued and submitted on briefs, the following order was entered by the trial court: "The court finds that said demurrer to said amended petition should be sustained solely upon the ground that such amended petition fails to plead a cause of action. It further appearing to the court from the facts disclosed in the amended petition that such amended petition cannot be amended so as to state a cause of action by alleging facts of which proof could be furnished, and plaintiff in open court electing to stand upon her pleading, the court finds that the petition of the plaintiff should be dismissed." Plaintiff insists that the court erred in entering this order sustaining the demurrer.

It is axiomatic that a demurrer admits only facts that are well pleaded, and does not admit conclusions of law or conclusions of the pleader contained within the allegations of the pleading.

We will now discuss the four propositions of law relied upon by the plaintiff to reverse the judgment of the district court, and present all of the authorities submitted in her brief in support thereof.

First: Plaintiff charges that Nebraska has recognized the damages sustained by real estate owners by virtue of a change in the location of a railroad, as set out in section 74-302, Comp. St. 1929.

Second: "The property of no person shall be taken or

damaged for public use without just compensation therefor." Const. art. I, sec. 21.

A careful examination of the statute above cited shows that it became effective July 1, 1866, under the territory of Nebraska, and has never been amended. However, in the case at bar the plaintiff has not attempted to bring her action within the provisions thereof by proper pleading; nor does this court believe that this section 74-302, Comp. St. 1929, applies to facts in the instant case.

We think that, so far as this petition is concerned, the terms of this statute give the plaintiff no relief whatever in this case, and the railroad line could be removed from the village of Keystone.

Now, in reference to the constitutional provision quoted above: To come within this section of the Constitution, the owner must have suffered a special injury which is different from that sustained by the community at large.

The plaintiff cites *City of Omaha v. Kramer*, 25 Neb. 489, 41 N. W. 295, in which a verdict was returned for damages in the sum of $2,000 because a viaduct was constructed in a street directly in front of the claimant's property. Judge Maxwell wrote an opinion reversing the judgment because the witnesses were allowed to testify to the plaintiff's damages rather than to the value of the property before and after the location of the viaduct, but in this opinion Judge Maxwell discussed section 21, art. I of the Constitution of Nebraska, which provides that the property of no person shall be taken or damaged for public use without just compensation therefor, and pointed out the actual damages to this private property different from that to the general public, and it was held that this claimant had sufficient special damage, notwithstanding the fact that the viaduct did not take any of the plaintiff's land, but was simply placed in the street adjoining the land.

The plaintiff also cites the case of *Gledhill v. State*, 123 Neb. 726, 243 N. W. 909. The state had constructed a cheap, temporary bridge across a watercourse on U. S. highway No. 75 in the place of a steel bridge which had been

washed out, it being necessary to replace the bridge quickly to avoid inconvenience to the heavy traffic from Omaha to Kansas City over this highway. Many piles were driven, and a sudden thaw caused ice to break up and lodge against the piling, causing an ice gorge or dam, which flooded the water back onto the land, causing special damage. The plaintiff in her brief cites the case, with a quotation therefrom, but does not make any application to the facts in this case. It appears from a careful reading of the case that the plaintiff's property rights had been directly invaded by the state through the improper construction of this temporary bridge, by reason of which the plaintiff sustained property damage by the flooding of his land, which was special damage not suffered by the public at large.

In the case of *Nine Mile Irrigation District v. State*, 118 Neb. 522, 225 N. W. 679, the state of Nebraska had constructed a bridge across the North Platte river on a county highway in Scotts Bluff county. In a long opinion Judge Day affirmed the judgment entered on the verdict in favor of the district. Judge Good alone dissented. This bridge was located about 1¼ miles above the headgate of the irrigation canal, and so changed the current of the river that no water ran into the headgate of the irrigation district. This action was based upon a wrongful act of the state, in that it damaged the property of the irrigation district without just compensation, in violation of section 21, art. I of the Constitution, and it was held that the state itself is prohibited from damaging property for public use without compensation. It was said in the opinion that, by the acquisition of a right of way for a highway by condemnation proceedings, neither the county nor the state acquires the right to divert water of a natural stream to the damage of the property of an irrigation district, and the effect of this decision was that the diversion of waters from the headgates of the irrigation ditch was a direct special damage to the plaintiff's property.

The fourth and last case cited by plaintiff to sustain this

contention is *Chicago, R. I. & P. R. Co. v. O'Neill*, 58 Neb. 239, 278 N. W. 521. This decision, written by Judge Sullivan, was well presented to this court, two of the attorneys appearing in this case being W. J. Bryan and Roscoe Pound. Mrs. O'Neill purchased a lot on P street in Lincoln, and erected a two-story dwelling-house thereon. Five years later, in 1892, the Rock Island constructed its line of railroad across P street, 225 feet west of the plaintiff's property, and constructed a depot, and rendered P street impassable. The jury returned a verdict in favor of the plaintiff, which was affirmed by this court. The evidence clearly indicated the extent and character of the permanent injury to her property, which entitled her to special damages. There can be no contention that in this case the plaintiff suffered an injury in the closing of P street, which was an entirely different injury than that suffered by the general public at large, and therefore it seems to the court that the holding in the *O'Neill* case has little bearing upon the instant case.

Third: Plaintiff contends that a property owner whose property is served by the facilities of a railroad company, which adds a special value to such property because of such service, suffers damages by virtue of the discontinuance of the railroad, and the railroad company cannot change the location of said railroad to the injury of the landowner.

In support of this contention, plaintiff cites the case of *Brown v. Atlantic & B. Ry. Co.*, 126 Ga. 248, 55 S. E. 24, in which the railroad company relocated 19 miles of its line. There was a judgment for the railroad company, which was reversed upon appeal, and it was held that a railroad company has the right to choose its route, and when it has exercised that right it cannot subsequently change the location of its route without express legislative authority. This is true in Georgia because section 2171 of the Civil Code of 1895 does not authorize a railroad company at its mere volition to tear up its road and relocate it at a different place. If Nebraska had the same statute, prohibiting such a removal, then this case would be strictly in point.

The case of *Union P. R. Co. v. Hall*, 91 U. S. 343, 23 L. Ed. 428, is an interesting case cited by the plaintiff, and decided by the court in 1875. This was an action in mandamus to compel the railroad company to continually use the Missouri river bridge and start its trains from Council Bluffs, and it was held that two private citizens, Hall and Morse, were competent to bring the action. While this decision requires the continuous operation of the Union Pacific from Council Bluffs, Iowa, its eastern terminus, as a land grant railroad, according to the requirements of congress, it will be noted that it was an action in mandamus, and in no way involved an action for damages caused specifically to plaintiff's property.

The fourth and final proposition of law relied upon by plaintiff for a reversal is that land whose market value is sustained by certain facilities, advantages and accessibility, when such facilities, advantages and accessibility are destroyed for a public use, and the market value of said land destroyed, the landowners are entitled to recover such damages sustained by them.

Plaintiff cites *United States v. Welch*, 217 U. S. 333, 30 S. Ct. 527. In this opinion, filed by Justice Oliver Wendell Holmes, released in 1910, an action was brought to recover the value of a strip of land of about three acres lying along the side of Four Mile creek, which land was permanently flooded by a dam on the Kentucky river. In this very short opinion the court allowed recovery for damages to the plaintiff because in taking the three acres of land it cut off his way into the remainder of his tract of land, and thereby subjected his land to special damages. Justice Holmes cites several cases where owners were not allowed to recover because the rights of the plaintiff in those cases were subject to the superior right of the public, and says that the other cases submitted simply confused the argument, for in this case there was no question of the plaintiff's private rights.

In plaintiff's brief three pages are devoted to quotations from the case of *Rumsey v. New York & N. E. R. Co.*, 133 N. Y. 79, 30 N. E. 654. This was an action in which the

plaintiffs sought to recover damages to their uplands because the defendant railroad company constructed its roadbed across the water-front, thereby cutting off plaintiffs' access to the river, and the court assessed damages of $10,-500 on the ground that plaintiffs' premises for the purpose of a brick-yard had been depreciated to that extent, but the judgment was reversed and a new trial granted on account of erroneous rules set out by the trial judge. It appears that this was a peculiar and special damage suffered by the plaintiffs in the *Rumsey* case, and this court fails to see in what way this decision can be applied in the case at bar.

Another case cited by the plaintiff is *Harrison v. Pacific Ry. & Navigation Co.*, 72 Or. 553, 144 Pac. 91. Paragraph 6 of the syllabus of this opinion, reading "Where the construction of a railroad prevents access by the owner of upland or timber land to tide water, such prevention of access is a proper element of damages," shows that this case sheds no light upon the case at bar.

In the case of *State v. Superior Court*, 102 Wash. 460, 173 Pac. 192, the supreme court of Washington set aside its former opinion and held that the Willapa Power Company, which had a franchise from the city of South Bend for supplying power and water to the inhabitants of that city, had a superior right to the Weyerhaeuser Timber Company, and could condemn the right which had been acquired by the timber company, as the condemnation by a power company would be of benefit and advantage to the public generally. It is difficult to see any application of the holding made by the Washington court in this case to the case at bar.

In the case of *New York, N. H. & H. R. Co. v. Blacker*, 178 Mass. 386, 59 N. E. 1020, the supreme judicial court of Massachusetts in 1901 had before it a case in which Mt. Vernon street in Dedham, running through a coal and lumber yard, was elevated 17 feet over a railroad track, and this made it impossible to maintain two spur tracks which ran into the lumber yard, which spur tracks had been used for many years. The owner of the lumber yard brought

an action for damages for the destruction of the two spur tracks. The opinion stated that there was no evidence that the railroad company discontinued the use of the spur tracks on its own volition, which was ordered by the public authorities for the convenience and safety of the public. The court held that the plaintiff could not recover the cost of moving the lumber and coal, nor the loss from waste in moving it, nor the damages caused by the interruption of business, but the damages recoverable are limited to the land taken, or injured by the taking, and do not include consequential damages. Judge Loring said: "Nor is it material that under the statute the respondent railroad, *which could have removed the spur tracks without making compensation to the petitioners* (emphasis supplied) had it desired to do so for business purposes, has to pay sixty-five per cent. of the damages of the changes of grade."

In the case of *Kayser v. Chicago, B. & Q. R. Co.,* 88 Neb. 343, 129 N. W. 554, the railroad company purchased a block of lots in the city of Hastings, from which all of the dwellings, trees and shrubbery were removed, and the block was then excavated from three to seven feet, four tracks placed thereon for the purpose of forming a freight depot, and it was held that Mr. Kayser and his wife were entitled to the verdict of $1,100 returned by the jury for the diminution in value of the plaintiffs' property by the building of these sidetracks adjacent to their property. It is apparent from a reading of this opinion, written by Chief Justice Reese, that the proximity of the trackage extending into and narrowing the street in front of the plaintiff's property was a direct invasion of their property rights, and that the plaintiffs had sustained special damages, and the recovery was permitted.

And, finally, the plaintiff cites us to the case of *Steck v. Platte Valley Public Power & Irrigation District,* 132 Neb. 822, 273 N. W. 268. In this case Steck owned land adjacent to the large reservoir constructed two miles south of Sutherland. The district bought several tracts of land from him, one of 6.67 acres and another of 152.56 acres, which

land was taken into the reservoir site, but his remaining land was not taken into consideration in these deals. The evidence disclosed that Steck would have to travel more than two miles farther to go around the west end of the reservoir to go to his market town. In this case the district argued that Steck suffered no damage other than that suffered by the community in general, and Judge Good in writing the opinion said that if this were true it would no doubt be a bar to any recovery by Mr. Steck, but held that the evidence did not sustain such a contention, for the reservoir deprives Steck of any outlet to the north in the direction of his principal market, and cited other reasons why there was a difference between the injury to Steck's land and the injury to land of those in the community farther to the south.

We have now presented, and very briefly discussed, all of the 13 cases set out in the brief of plaintiff to support a reversal. In our opinion, there is no case cited by the plaintiff which is authority for a reversal of the judgment in the instant case.

In addition to the four propositions of law set out in plaintiff's brief, we notice that, in paragraph 4 of the petition, plaintiff charges that the storage of two million acre feet of water above this dam creates a hazard to the property in the town of Keystone because of the danger of breakage and floods which would follow a breakage of said dam. This court has considered this question of fear as relating to the value of land in several cases where electric lines carrying high voltage electricity were charged to depreciate the market value of the land, and this court has held that mere general fears of this nature cannot be made the basis upon which to predicate any depreciation in market value, for an ill-defined fear that at some unknown time in the future some misfortune may come cannot be considered in fixing the amount of damages. *Dunlap v. Loup River Public Power District*, 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400.

While it appears that some courts have taken the other

view, as shown in the annotation in 124 A. L. R. 413, yet we believe that our holding in Nebraska is supported by the great weight of authority. To hold in the case at bar that this Kingsley dam, no matter how substantially built, by the best engineers, is a danger or hazard because some dams in some states in times past have given way, would be equally true and depreciate the value of all property in the valley below this dam for perhaps a hundred miles. We believe that such ill-defined fear of future misfortune is purely speculative, and should not be considered.

The late case of *Feltz v. Central Nebraska Public Power & Irrigation District*, 124 Fed. (2d) 578, decided by the circuit court of appeals, eighth circuit, in 1942, was heard before Stone, Woodrough and Johnsen, circuit judges. The same counsel appeared in the case as in the instant case, and the opinion is somewhat in point. The district required a portion of the Feltz land for the relocation of U. S. Highway No. 26, because of this same Kingsley dam and reservoir. The appraisers assessed this damage at $2,473.80, and the verdict of the jury on this item was $1,914.12. But plaintiff also sought recovery because the shipping town of Belmar, included in the reservoir site, which had been located seven miles from his property, was to be removed, and its removal would separate him from his market by twice that distance, to plaintiff's total damage in the sum of $16,000.

In this opinion the circuit court approves the holding in *Lowell v. Buffalo County*, 119 Neb. 776, 230 N. W. 842, to the effect that a landowner cannot ordinarily recover, on account of a lawful public improvement, damages that he suffers in common with the public generally, though his loss may be greater in degree.

In this opinion it is also said: "The removal of Belmar rendered its means of ingress and egress useless, not alone to appellants but to the community in general which had used them and there is the same bar to appellants' recovery in respect to the road as there is in respect to the town. * * * In common with their neighbors who traded or shipped to

Belmar, they must ship and trade elsewhere. They cannot be said to have had any property right in or to Belmar taken or damaged by the removal of the town or railroad within the constitutional provisions relied on."

The allegations of the amended petition in the case at bar do not show that the plaintiff or her assignors have sustained any special damage different than that sustained by the public generally. It is true that some suffer more than others, but that constitutes a difference in degree, and not in kind.

Section 21, art. I of the Nebraska Constitution provides: "The property of no person shall be taken or damaged for public use without just compensation therefor," but it was not intended to reach every possible injury that may be occasioned by a public improvement. If an obstruction or improvement does not practically affect the enjoyment or use of property not taken, and thereby impair its value, no action will lie. To sustain an action for such damages, the damage must be to property, and not a mere personal inconvenience or injury, such as damage suffered by the public generally. See *City of Winchester v. Ring*, 312 Ill. 544, 144 N. E. 333, 36 A. L. R. 520; *Iron City Automobile Co. v. City of Pittsburgh*, 253 Pa. St. 478, 98 Atl. 679, L. R. A. 1917C, 420.

In so far as the removal of the railroad itself is concerned, in the absence of a contract with such railroad company, or a statute forbidding removal of any line of railroad, there is no right in any property owner in a town served there to require its continued maintenance and operation. See *Southern R. Co. v. Toccoa Rock Crushing Co.*, 47 Ga. App. 558, 171 S. E. 179.

When there is no substantial damage to an individual, aside from that which may occur to all other members of the public, although differing in the degree of the damage, there cannot be a right of action for the removal of a railroad, unless there is an express contract governing the relations of the parties. See *Helena & Livingston Smelting & Reduction Co. v. Northern P. R. Co.*, 62 Mont. 205, 204 Pac. 370, 23 A. L. R. 546.

An application was made to the commission for abandonment of a certain line of track, not because it had been operating at a loss, but because its continued existence would be an impossibility in view of a flood control project, begun by the war department, which will create a reservoir in which 12 miles of the line are now located. The order permitted the entire discontinuance of a railroad line approximately 20 miles long. The judgment of the court below was approved, over the protest of a coal mining company, which alleges it will be forced out of business if railroad service be discontinued. *Purcell v. United States,* 315 U. S. 381, 62 S. Ct. 709.

In the case of *Woodruff v. United States,* 40 Fed. Supp. 949, a short branch line of the insolvent New York, New Haven & Hartford Railroad Company was barely paying expenses when the largest shipper, Woodruff Fertilizer Company, made arrangements to move its location, and the Interstate Commerce Commission authorized an abandonment of the line. In the opinion we find a discussion of the efficient truck competition on improved highways, and the court makes this statement: "To be sure, abutting owners and shippers accustomed to local service may find the process of transition the occasion of inconvenience; it may even depress property values. But the law contemplates that these incidents must yield to the broader public interests." The complaint was dismissed for want of equity.

No cause of action arises apart from special contract, for the abandonment or relocation of a railroad branch or line, on the part of those who have been accustomed to use the same, since their damages, although they may be different in degree, are not different in kind from those suffered by the public generally. See 44 Am. Jur. 430, sec. 211.

The reason that there is no cause of action is that ordinarily the railway company is under no implied obligation to continue the use of a track or station, or because the injury is not a special damage differing in kind from that sustained by the public generally, although it may be greater in degree, and therefore it is not of a nature which may

constitute the basis of a cause of action, but is *damnum absque injuria.* See *Bryan v. Louisville & N. R. Co.,* 244 Fed. 650; *Montgomery v. Atchison, T. & S. F. Ry. Co.,* 89 Fed. (2d) 94; *Palmer v. Delaware, L. & W. R. Co.,* 277 Pa. St. 1, 120 Atl. 668; *Beatty v. Louisville & N. R. Co.,* 176 Ky. 100, 195 S. W. 487; 23 A. L. R. 556, Ann.

There is in the case at bar no infringement of any statute, nor is there any violation of constitutional guaranties in relocating this line of railroad so that the land it formerly ran on can be submerged at the bottom of a public works reservoir of value to the state at large.

The petitioner does not charge that any of the landowners in the former town of Keystone had any contract requiring the permanent operation of the railroad on its original line. Under these circumstances, no landowner can recover from the district for the damages he suffers, in common with all others, by the relocation of the railroad line, thereby depriving him of the railroad facilities he had formerly enjoyed. The action of the trial court in sustaining the demurrer to the amended petition is hereby affirmed.

AFFIRMED.

Simmons, C. J., concurs in the result.