NORTHEASTERN GAS TRANSMISSION COMPANY *v.*
HELEN G. ALTSCHUL

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 83352

NORTHEASTERN GAS TRANSMISSION COMPANY *v.*
GEORGE H. JELLIFF, JR., ET AL.

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 83630

NORTHEASTERN GAS TRANSMISSION COMPANY *v.*
ANTOINETTE D. LAPHAM ET AL.

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 83633

NORTHEASTERN GAS TRANSMISSION COMPANY *v.*
JOSEPH WEBER, JR.

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 83657

Memorandum filed December 31, 1953.

*Marsh, Day & Calhoun,* of Bridgeport, for the Plaintiff.

*Maguire, Walker & Middleton,* of Stamford, and *Morse & Marvin,* of New Canaan, for the Defendants.

CULLINAN, J. By order of the Superior Court, its committee, comprising Attorneys Matthew E. Hanna, Lloyd J. Vail and John Keogh, Jr., heard these four condemnation actions for the purpose of assessing damages to the several defendants by reason of the plaintiff's having taken easements for the construction and operation thereon of its natural gas transmission pipe line. To the defendant Helen G. Altschul was awarded $38,850; to the defendant George H. Jelliff, Jr., was awarded $10,575; to the defendant Antoinette D. Lapham was awarded $68,116.25; and to the defendant Joseph Weber, Jr., was awarded $4896.75.

By agreement of counsel, much of the evidence presented to the committee was made applicable to the four cases, the principal exception being the evidence as to the value of the damage suffered by each separate property. The committee filed an independent report in each proceeding; the reports, however, being substantially identical in their findings save for the amount of damage, which varied in each case. Thereafter the plaintiff filed individual motions to correct the committee's reports, the motions being substantially identical, as were the separate decisions of the committee on these motions to correct. The plaintiff has filed separate exceptions to the report (as amended) of the committee and to its acceptance in each case, but counsel have agreed that decision of the basic issues in any one matter will apply with equal force to the four actions.

The plaintiff has made a many-sided attack on the report of the committee, a circumstance which has required a meticulous study and rereading of the 2100-page transcript of testimony. Its exceptions to the report run the gamut from attacks on evidential rulings and conclusions reached by the committee to a substantial quarrel with the committee's basic philosophy of damage as reflected in its awards to the several defendants.

In its report, the committee has detailed the factors considered by it in computing damages. They include "the effect on the market value of the defendants' real estate by reason of the apprehension of explosions and resulting fires in the minds of the reasonable buying public, which has been brought about by the widespread publicity concerning other explosions; the permanent easement over a strip 30 feet in width and the temporary easement for an additional 20 feet; the swathe cut through woodland along the easement, which in places is unsightly; certain relatively narrow or constricted areas which

have been greatly depreciated because of the fact that the pipe line, in effect, detaches these areas from the remainder of the defendants' properties, leaving these dislocated areas of little practical value; various problems which are likely to arise by reason of the existence of the pipe line in connection with the future development of the property; the right to construct additional pipe lines in the future; and the right to traverse the easement for purposes of inspection and repair."

The committee further found that there have been approximately 1712 ruptures of natural gas transmission pipe lines in the United States during the last ten years and that publicity, attendant upon these explosions, has caused a substantial depreciation in the value of real estate through which plaintiff's pipe line passes. On the basis of this finding, the committee concluded that apprehension on the part of the buying public is reasonable and well founded, constituting a proper item for consideration in the ascertainment of damages.

The sole basis for the finding concerning the 1712 pipe line ruptures is predicated on a report of the federal power commission, which report ultimately appeared in the Congressional Record. The contents of this report constituted hearsay evidence and no attempt was made to establish the truth of the material within the Congressional Record. Even assuming credible and legally sufficient evidence to support this finding of 1712 pipe line failures, there was absolutely no supporting evidence relating the causes thereof to similar or substantially similar conditions existing in or to be reasonably anticipated in connection with plaintiff's pipe line on defendants' properties or elsewhere within Connecticut. Yet the committee repeatedly found the fact of the explosions from the publicity. (See Report of Committee: "Many of the explosions within recent years

. . ."; "This publicity concerning explosions . . ."; although damage has occurred at distances up to approximately 3,000 feet from pipe explosions. . . .") Further, the defendants were permitted by the committee to introduce as evidence seventeen newspaper articles of purported pipe line failures.

Admission of these publications as proof of the purported facts contained therein violated the rule against hearsay evidence and the committee's findings based thereon are erroneous. Public belief resulting from such publicity is not material or relevant until proper evidence of the facts recited therein has been offered, since, in the absence of such evidence, the public belief cannot be regarded as well founded and the damage, if any, resulting therefrom is "not a necessary, natural, or proximate result of the taking." *Meriden* v. *Zwalniski,* 88 Conn. 427, 434; *Andrews* v. *Cox,* 127 Conn. 455.

There is sound reason in public policy for the rule adopted in *Meriden* v. *Zwalniski,* supra. Organized resistance of minority groups with the adverse publicity and propaganda fostered by such groups against a variety of public improvements is a matter of common knowledge, as is the fact that once such improvements become a reality, the hysteria incited by the opposition abates or disappears. If such publicity could properly be considered in arriving at the damages for the taking of property for such improvements, the ultimate cost to the public would be an excessive burden far beyond the realities of the loss to the property owners.

Nor is the evidence as to explosions or ruptures of other pipe lines relevant to the possibility of such an occurrence on plaintiff's pipe line without evidence relating the conditions under which such failures occurred to similar or substantially similar conditions existing in or to be reasonably anticipated

in connection with plaintiff's pipe line. The basic principle is stated in 2 Wigmore, Evidence (3d Ed.) § 442 as follows: "The general logical requirement is, then, that when a thing's capacity or tendency to produce an effect of a given sort is to be evidenced by instances of the same effect found attending the same thing elsewhere, these other instances have probative value—*i.e.* are relevant—to show such a tendency or capacity *only if the conditions or circumstances in the other instances are similar to those in the case in hand.* . . . The similarity that is required is, in short, a similarity in essential circumstances, or, as it is usually expressed, a *substantial similarity, i.e.* a similarity *in such circumstances or conditions as might supposably affect the result in question.*"

The rule in Connecticut is that other instances are irrelevant unless they occurred under conditions substantially similar to those in issue; *Wilkins* v. *G. Fox & Co.*, 125 Conn. 738; *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221; or under conditions "substantially similar in all relevant respects to those present when the accident occurred." *Dobosz* v. *Nyren,* 131 Conn. 270, 272.

The committee specifically based its awards, to an undisclosed extent, upon public fear or apprehension resulting from publicity concerning other explosions. Moreover, from a careful analysis of the committee's report and the zonal theory of depreciation adopted by it, it is apparent that the committee's awards were based primarily upon apprehension of danger from plaintiff's pipe line. Connecticut has aligned itself with the general rule that mere general and unfounded fears of future injury to person or property by reason of the proposed construction or operation of a public improvement cannot be made the basis for depreciation in the value of the remainder of the tract. 124 A.L.R. 407, 413. It has

been held, for example, that fear of danger from an electric power line cannot be the basis on which to predicate depreciation in market value. *Alabama Power Co.* v. *Keystone Lime Co.*, 191 Ala. 58, 68. The Alabama court made the further observation that a large percentage of the agencies which conserve human effort are, when negligently controlled, dangerous to human life, and many objects now used upon our streets and highways were, when first introduced, objects of terror to those who knew nothing about them, citing the automobile as a case in point. Said the Alabama court (p. 71): "If it be true that some people who have not grown accustomed to lines similar to that of appellant are afraid of this improvement, and that therefore they are not willing to buy appellee's lands, the law can furnish to appellee no remedy therefor, and cannot regard depreciation created by such a cause as resting upon any substantial basis." Similar holdings are to be found in *Illinois Power & Light Corporation* v. *Barnett*, 338 Ill. 499; *East St. Louis Light & Power Co.* v. *Cohen*, 333 Ill. 218; *Rockford Electric Co.* v. *Browman*, 339 Ill. 212; *Hopkins County* v. *Rodgers*, 275 Ky. 778; *Wahlgren* v. *Loup River Public Power District*, 139 Neb. 489; *Scully* v. *Central Nebraska Public Power & Irrigation District*, 143 Neb. 184.

Further consideration of the numerous exceptions to the committee's report becomes unnecessary since the awards must be set aside as having been arrived at under an erroneous concept of the proper factors to be evaluated in arriving at a just ascertainment of damages. The committee expressly based its award of damages, to an undetermined extent, upon the existence of a public belief as to possible speculative accidents which under *Meriden* v. *Zwalniski*, 88 Conn. 427, is not material in the absence of a finding as to the actual existence of an unsafe condition in plaintiff's pipe line, a finding which the

committee failed to make. Furthermore the contents of the Congressional Record cannot be accepted as proof of the purported facts recited therein and the committee's finding of 1712 ruptures of natural gas transmission lines during the past ten years, which finding was based solely on testimony as to the contents of the Congressional Record, constituted harmful, prejudicial and reversible error.

Section 1963c of the 1953 Cumulative Supplement provides: "Said court [Superior Court] or judge may accept such report or may reject it for irregular or improper conduct by such committee in the performance of its duties. If the report be rejected, said court or judge shall appoint another committee which shall proceed in the same manner as the first committee was required to proceed. If the report be accepted, such acceptance shall have the effect of a judgment in favor of the owner of the property against such corporation for the amount of the assessment made by such committee. . . ."

Accordingly, it is ordered that the reports in the within four matters be rejected. Under the aforesaid statute, the following committee is hereby appointed and ordered to proceed in the same manner as the first committee was required to proceed: Honorable Allyn L. Brown, Norwich; Attorney Hugh C. Curran, Bridgeport, and Attorney Benjamin N. Leipner, Bridgeport.